Filed 3/30/23 P. v. Barriga CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F082556 |
| Plaintiff and Respondent, | (Super. Ct. No. BF169612A) |
| v. | |
| GILBERT ARIZMENDEZ BARRIGA, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. John D. Oglesby, Judge.

Jake C. Stebner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Gilbert Arizmendez Barriga was found guilty by a jury of multiple counts of lewd and lascivious acts with a child under the age of 14, multiple counts of

oral copulation or sexual penetration of a child under the age of 10, sexual intercourse or sodomy with a child under the age of 10, and multiple counts of continuous sexual abuse of a child. The trial court sentenced him to an aggregate prison term of 125 years to life.

Barriga raises several claims on appeal. First, Barriga argues that the child sexual abuse accommodation syndrome (CSAAS) evidence was irrelevant because it is not useful to present-day jurors to disabuse misconceptions about child abuse victims, and because the complaining witnesses were adults when they testified. Second, he contends that the CSAAS evidence was impermissibly tailored to fit the evidence of his case. Third, he argues that the CSAAS evidence was more prejudicial than probative, and should have been excluded. Finally, he contends that admission of CSAAS evidence violated his constitutional rights.

Barriga further contends that his trial counsel's failure to object and preserve the above issues for review on appeal constitutes ineffective assistance of counsel. Finally, Barriga argues that Senate Bill No. 567's (Stats. 2021, ch. 695, § 1.3.) (Senate Bill No. 567) amendments to Penal Code section 1170[1] require remand for resentencing.

We vacate the sentence and remand the matter for a new sentencing hearing in compliance with Senate Bill No. 567, but otherwise affirm the judgment.

## PROCEDURAL HISTORY

On February 16, 2021, an amended information charged Barriga with four counts of lewd and lascivious acts upon a child under the age of 14 (§ 288, subd. (a); counts 1-3 & 10), one count of sexual penetration with a child ten years old or younger (§ 288.7, subd. (a); count 6), three counts of oral copulation with a child ten years old or younger (§ 288.7, subd. (b); counts 4, 5, & 8), and two counts of continuous sexual abuse of a child under the age of fourteen (§ 288.5, subd. (a); counts 7 & 9.) The information specially alleged as to counts 3, 7, 9, and 10, that charges against multiple victims

---

[1] Unspecified statutory references are to the Penal Code.

2.

implicated the "One Strike" sentencing scheme pursuant to section 667.61, subdivision (e)(4).

On February 18, 2021, a jury convicted Barriga on all counts and found the section 667.61, subdivision (e)(4) special allegation true.

On March 12, 2021, Barriga submitted several letters in his support to be considered at sentencing. Among these was a copy of Barriga's service record in Vietnam during the Vietnam war.

The trial court sentenced Barriga to six consecutive terms of 15 years to life on counts three through five and seven through nine, 25 years to life on count six, the middle term of six years on count one, and one third the middle term of two years each for counts two and ten. In total, Barriga was sentenced to 115 years to life plus 10 years.

On March 18, 2021, Barriga filed a timely notice of appeal.

## STATEMENT OF FACTS

**The Sexual Abuse**

The heinous nature of the conduct in this case cannot be overstated. However, the full details of the abuse are not relevant to the issues brought on appeal. Therefore, a summary of Barriga's conduct follows.

Barriga was married to B.R. B.R. had four children at the time when they married, including Jane Doe No. 1.[2] B.R.'s oldest daughter also had six children of her own, including Jane Doe No. 2 and Jane Doe No. 3.

Jane Doe No. 1 testified that Barriga sexually touched her from the time she was 10 or 11 years old until she was a teenager.

---

[2] At trial, to protect their identities, the victims were identified by their first names only. In this opinion, we take the more protective measure of referring to them by the pseudonyms "Jane Doe No. 1," "Jane Doe No. 2," and "Jane Doe No. 3." (See § 293.5, subd. (a).)

3.

Jane Doe No. 1 also testified Barriga engaged in numerous sexual activities with her, including penetration. A few months after Barriga began sexually abusing Jane Doe No. 1, she told her siblings and aunt about the abuse. Her aunt called Child Protective Services (CPS), however Jane Doe No. 1 chose not to disclose the abuse to CPS because she was afraid of "being taken away." The abuse continued for years afterward.

Jane Doe No. 2 testified that Barriga sexually abused her between the ages of five and ten years old. Barriga would molest her at least once a day, almost every day, for years. Barriga touched her in his truck and home when B.R. was not present. Barriga would also take her to homes he was remodeling and wait for his coworkers to leave to touch her.

One time, when Jane Doe No. 2 was nine years old, her mother asked her if Barriga had touched her inappropriately. Jane Doe No. 2 denied Barriga had touched her, because she feared it was her fault and that she "was splitting [her] family apart." When Jane Doe No. 2 was 17, she told her boyfriend Barriga had molested her. She testified that she was becoming more sexual with her boyfriend, and this caused her to have flashbacks of Barriga's abuse. Jane Doe No. 2 then spoke with Jane Doe No. 1 about the abuse.

Jane Doe No. 3 testified that Barriga touched her sexually when she was between the ages of eight or nine to ten or 11. She recalled that Barriga had touched her more than three times. Jane Doe No. 3 did not tell anyone about the abuse because Barriga told her not to say anything, and Jane Doe No. 3 was afraid of getting in trouble if she told anyone. Years later, when Jane Doe No. 2 told Jane Doe No. 3 that Barriga had molested her, Jane Doe No. 3 also spoke about being abused by Barriga.

**The CSAAS Testimony**

At trial, Dr. Michael Musacco testified for the prosecution as an expert in the field of CSAAS. Prior to Dr. Musacco taking the stand, Barriga objected to his testimony on relevance grounds. The prosecution argued that based upon the motions in limine and the

4.

nature of the case, the CSAAS evidence was relevant. The trial court agreed, noting that CSAAS evidence "is inherently an issue [anytime] … you have a late reporting."

Primarily, Dr. Musacco testified that he did not review any materials related to this case and did not meet with anyone involved in this case to the best of his knowledge. His testimony described the body of research underpinning CSAAS and its symptoms and behaviors. He emphasized that CSAAS was not a diagnostic tool or a list of symptoms. He also described how the stages of CSAAS have been verified through retrospective research.

Dr. Musacco described the five stages to CSAAS: secrecy, helplessness, accommodation, delayed and unconvincing disclosure, and retraction. He then went into detail about each of the five stages. In relevant part, he discussed the following.

### i. Helplessness

"Q: As the victim gets older and begins to start understanding that sexual abuse is wrong, does that sense of helplessness still remain?

"A: Yes. Even when the disclosure does occur it doesn't all of a sudden, you know, wave a magic wand and poof the child feels empowered. That sense of helplessness has been in the works or it's been a part of the process for, you know, months, weeks, or years. And just by virtue of the fact that let's say the child goes to a health class at school and they've been taught about sexual abuse and maybe they tell their teacher. That doesn't necessarily make that sense of helplessness go away even when they – they've made the disclosure."

### ii. Escapism

"Q: You also talked about drug use and acting out sexually. Correct?

"A: Yes.

"Q:     And how is that exactly in terms of accommodation? Why do we see that?

"A:     I mean, it's – it's very common. Sexual acting out, what happens is that the child has been exposed to a particular behavior and they repeat that behavior.  So I've seen clinically where I'll evaluate a child or even an adult because they've done something some sexual crime and it comes out that this happened to them years before.  So a sexual – having been sexually abused is a risk factor for sexually abusing. Persons who abuse drugs they start using the drug not because they want to be a drug addict but it's an escape.  You know, somebody goes home.  Had a stressful day. They have a bottle of beer or five.  Children that experiment with drugs do it for a variety of reasons but it does provide an escape. And so the accommodation those behaviors are helping the person to deal with that stress and sexual acting out, drug abuse, self injurious behaviors are all ways to escape feelings."

*iii.    Relationship Issues*

"Q:     Now talking about the fourth stage of delayed reporting or unconvincing disclosure, is there a set time that victims will disclose?

"A:     No.  As I mentioned, there can be environmental or relationship triggers. … Equally common is when children hit [adolescence] and as I mentioned earlier children progress from where their family is their primary support group or emotional connections and then when we hit [adolescence] our friends become more important to us and we start talking to our friends and disclosing to our friends.  And oftentimes it can be – that can lead to around the same time we have the sexual education that occurred in junior high schools and middle school and even elementary school.  Those are all triggering events that can lead to a disclosure.

"Q:     Can relationship issues also lead to disclosure?

"A:     Can you be more specific?

6.

"Q: Relationship issues with say a boyfriend or a family member?

"A: I mean, the boyfriend would be the – I mean, the perfect example of that. Where the child has now a relationship where they – you know, they are connected to somebody and, you know, that's what happens to us as we develop relationships. Our intimacy changes. … So that type of relationship would be very common example of a situation where a child could disclose. You know, changes in the relationship would be – or a new relationship. That would be what I would be looking for as a kind of triggering event."

*iv.   Disclosure by Other Victims*

"Q: Can also disclosure by another victim be a triggering event?

"A: It's not uncommon.

"Q: Can you describe that?

"A: I've seen clinically dozens and dozens of occasions where a child will come forth and say, this happened to me and investigation occurs and other children, yes, this happened to me, this happened to me as well. It's not uncommon to see that occur. That kind of triggering event is disclosure by another child which essentially opens the door for the non-disclosing child to tell."

Barriga's counsel did not object to the substance of this testimony, although counsel had previously moved to exclude all CSAAS testimony.

## DISCUSSION

## I.   The CSAAS Evidence Was Relevant

For purposes of our discussion, we presume that despite his failure to object to the CSAAS evidence below, Barriga has not waived his argument. Challenging Dr. Musacco's testimony as a whole, Barriga argues first that the CSAAS evidence was irrelevant because it is not useful to present-day jurors to disabuse misconceptions about child abuse victims, and because the complaining witnesses were adults when they

7.

testified. We decline to depart from long-standing state precedent and find the CSAAS evidence remains relevant in cases involving child sexual abuse.

### A.     Legal Standard

We review for abuse of discretion decisions regarding the admissibility of expert testimony. (*People v. Brooks* (2017) 3 Cal.5th 1, 43.) Expert testimony on CSAAS has long been held admissible in California for the limited purposes of dispelling commonly held myths or misconceptions about child sexual abuse and aiding the jury in "evaluating the credibility of an alleged child victim of sexual abuse." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*); see *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300–1301 (*McAlpin*); *People v. Bowker* (1988) 203 Cal.App.3d 385, 393–394 (*Bowker*).) CSAAS testimony is permitted " 'to explain the emotional antecedents of abused children's seemingly self-impeaching behavior,' " such as delayed disclosure of the abuse. (*McAlpin*, at p. 1301; see *Lapenias*, at p. 172.) An expert's explanation of CSAAS "is admissible to rehabilitate [a complaining] witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*McAlpin*, at p. 1300.)

### B.     Analysis

Barriga presents a number of out-of-state cases in support of his argument that CSAAS evidence is no longer relevant to rectify present-day juror misconceptions about child abuse. Recently, the Second District Court of Appeal addressed and refuted arguments similar to Barriga's in *People v. Munch* (2020) 52 Cal.App.5th 464 (*Munch*). Barriga invites this court to depart from both *McAlpin* and *Munch* and find that CSAAS evidence is no longer relevant today. We decline.

Barriga relies upon *People v. Robbie* (2001) 92 Cal.App.4th 1075, 1086, fn.1 (*Robbie*) for the proposition that "the public no longer holds the presumed misconceptions CSAAS testimony purports to address." His reliance upon *Robbie* is

misplaced. *Robbie* does not involve or address CSAAS evidence, but rather adult sex offenses. It is therefore entirely irrelevant to the instant case.

"[*McAlpin*] is binding on all lower courts in this state. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) That other jurisdictions may disagree with it does not change its impact on California cases. (*Ibid.*)" (*Munch, supra,* 52 Cal.App.5th at 468.)

Barriga also relies on *State v. Davis*, 581 N.E. 2d 604 (*Davis*), an Ohio Court of Appeals case, for the proposition that the CSAAS evidence is irrelevant when the victims testify as adults. We have not found any comparable California cases. To the contrary, CSAAS evidence appears to be regularly and properly introduced in cases where victims of child sexual abuse testify as adults. (See *People v. Mateo* (2016) 243 Cal.App.4th 1063, 1066 [victim older than 17 when she testified and abuse started when she was 9 years old]; see also, *Lapenias, supra,* 67 Cal.App.5th at p. 167 [victim was 20 years old when she testified and abuse started when victim was 13 years or younger]; *People v. Housley* (1992) 6 Cal.App.4th 947, 951 [victim was 18 when she testified and abuse happened three years prior].) We therefore find CSAAS evidence was relevant regardless of the fact that the victims were adults when they testified.

## II.     The CSAAS Evidence Was Not Impermissibly Tailored

### A.     Legal Standard

CSAAS testimony is permitted " 'to explain the emotional antecedents of abused children's seemingly self-impeaching behavior,' " such as delayed disclosure of the abuse. (*McAlpin*, *supra,* 53 Cal.3d at p. 1301; see *Lapenias*, *supra*, 67 Cal.App.5th at p. 172.) An expert's explanation of CSAAS "is admissible to rehabilitate [a complaining] witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*McAlpin*, at p. 1300.)

However, pursuit of that laudable rehabilitative purpose must not lead the expert to cross over into affirmatively vouching for the truthfulness of a complainant's allegations against the defendant. (See *Lapenias*, *supra*, 67 Cal.App.5th at p. 180 [identifying the problem of the expert "vouching for the veracity" of the alleged victims]; *Munch*, *supra*, 52 Cal.App.5th at p. 468 [" 'The expert is not allowed to give an opinion on whether a witness is telling the truth . . . .' "].) CSAAS evidence "is not admissible to prove that the complaining witness has in fact been sexually abused." (*McAlpin*, *supra*, 53 Cal.3d at p. 1300.) Accordingly, a CSAAS expert also "may not give ' "general" testimony describing the components of the syndrome in such a way as to allow the jury to apply the syndrome to the facts of the case and conclude the child was sexually abused.' " (*People v. Julian* (2019) 34 Cal.App.5th 878, 885.) Overall, the testimony must respect the " ' "fine but essential" ' line between an "opinion which would be truly helpful to the jury and that which merely conveys a conclusion concerning [the] defendant's legal guilt." ' " (*Id.* at p. 887.)

"It is one thing to say that child abuse victims often exhibit a certain characteristic or that a particular behavior is not inconsistent with a child having been molested. It is quite another to conclude that where a child meets certain criteria, we can predict with a reasonable degree of certainty that he or she has been abused. The former may be appropriate in some circumstances; the latter … clearly is not." (*Bowker, supra,* 203 Cal.App.3d at p. 393.)

**B.     Analysis**

Barriga argues that testimony by Dr. Musacco was improperly tailored to fit the evidence of this case. Barriga asserts the testimony about helplessness, escapism, relationship issues, and disclosure by other victims led the jury to use the CSAAS evidence as proof the victims' accusations were true. He relies on *Bowker, supra,* 203 Cal.App.3d 385 and *People v. Clotfelter* (2021) 65 Cal.App.5th 30 (*Clotfelter*) in support of his assertion.

10.

In *Bowker*, the CSAAS expert's testimony "accounted for nearly 70 pages of reporter's transcript and was replete with comments designed to elicit sympathy for child abuse victims and solicitations that children should be believed. [The expert] in effect said regardless how inconsistent a child's accounts of abuse are, abused children give inconsistent accounts and are credible nonetheless." (*Id.* at 394.) In particular, the expert additionally testified that CSAAS would help a person make a decision as to whether a child's behavior is consistent with being molested. (*Id.* at 395.)

In *Clotfelter*, the prosecutor made statements to the jury that it could use CSAAS testimony to infer the defendant was guilty of the crimes charged. (*Clotfelter, supra,* 65 Cal.App.5th at 64.) The prosecutor called the CSAAS expert as her first witness, and further solicited CSAAS testimony from two other non-expert witnesses. The prosecutor also highlighted the CSAAS testimony in her closing arguments to the jury. (*Id.* at 63.)

In this case, Barriga identifies four brief excerpts as problematic, out of over thirty pages of testimony by Dr. Musacco. While the general topics Dr. Musacco discusses in these excerpts bear some resemblance to the facts of this case, Dr. Musacco spoke in general terms and had previously stated that he was not familiar with the facts of this case or the individuals involved in it. His testimony, unlike the expert's in *Bowker*, is not "replete" with statements eliciting sympathy or solicitations for the jury to find the victims credible. (*Bowker, supra,* 203 Cal.App.3d at 394.)

Likewise, as distinct from *Clotfelter*, the prosecutor in this case called Dr. Musacco after the victims testified and did not mention the CSAAS evidence in closing argument. The CSAAS evidence was not highlighted by the prosecution in such a way as to imply the defendant was guilty of the crimes charged. (*See Clotfelter, supra,* 65 Cal.App.5th at p. 64.) Barriga's counsel also cautioned the jury during closing arguments that "with Dr. Musacco's testimony, again, you can't look at it and say if X has this behavior and go back and that means this happened. It doesn't work like that. That's why it's not a diagnostic tool."

11.

Finally, the jury was instructed with CALCRIM No. 1193, which states "[t]his testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged…."

Reviewing the record as a whole, we cannot say that Dr. Musacco "constructed a 'scientific' framework into which the jury could pigeonhole the facts of the case." (*Bowker, supra,* 203 Cal.App.3d at 395.) We find Dr. Musacco's testimony was not impermissibly tailored to fit the evidence of this case so as to vouch for the truthfulness of the allegations at hand.

## III.    The CSAAS Evidence Was Not More Prejudicial Than Probative

Barriga argues the CSAAS evidence was more prejudicial than probative, such that the trial court erred by admitting it under Evidence Code section 352. He asserts that the CSAAS evidence was not relevant to understanding any material issue in the dispute, and therefore the slightest prejudicial impact justifies its exclusion.

Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." We review the trial court's decision to admit evidence pursuant to Evidence Code section 352 for abuse of discretion. (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.)

As discussed, California courts have repeatedly found that CSAAS evidence is relevant in cases involving child sex abuse victims. "While CSAAS evidence is not relevant to prove the alleged sexual abuse occurred, it is well established in California law CSAAS evidence is relevant for the limited purpose of evaluating the credibility of an alleged child victim of sexual abuse." (*Lapenias, supra,* 67 Cal.App.5th at p. 171.)

Barriga has failed to show a substantial danger of undue prejudice, confusing the issues, or of misleading the jury. Dr. Musacco testified that he had not reviewed the facts of this case or spoken with any individuals involved in the case. He clarified that the

CSAAS framework was not a diagnostic tool, and his testimony regarding CSAAS was couched in general terms. Finally, the trial court instructed the jury with CALCRIM No. 1193, which directed the jury that CSAAS testimony was not evidence that the defendant committed the crimes charged. We therefore find the trial court did not abuse its discretion in admitting the CSAAS evidence pursuant to Evidence Code section 352.

## IV. Admission of The CSAAS Evidence Did Not Violate Barriga's Constitutional Rights

Barriga argues the CSAAS evidence was irrelevant and prejudicial, and therefore violated his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial and due process.

We have previously held that CSAAS testimony, by itself, does not deny a defendant due process or the right to a fair trial. (See *People v. Patino* (1994) 26 Cal.App.4th 1737, 1747.) Moreover, as discussed, the CSAAS evidence in this case was relevant and properly presented and admitted. Barriga has failed to demonstrate how his fundamental right to a fair trial was violated by the introduction of this evidence. We therefore conclude the admission of the CSAAS evidence in this case did not violate Barriga's constitutional rights.

## V. No Ineffective Assistance of Counsel

For the foregoing reasons, defendant's secondary claim of ineffective assistance of counsel also lacks merit. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687 [reversal for ineffective assistance requires both deficient performance and prejudice].) Because the CSAAS evidence was relevant and properly presented to the jury, there was nothing improper about it and counsel was not deficient in failing to object.

## VI. Senate Bill No. 567 Requires Remand and Resentencing

In late 2021, Senate Bill No. 567 was signed into law, and in relevant part amended section 1170, subdivision (b)(6) to state:

> "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the

13.

mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:

(A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

Absent evidence to the contrary, amendments to statutes that reduce punishment for a particular crime apply to all defendants whose judgments are not yet final on the amendment's operative date. (*In re Estrada* (1965) 63 Cal.2d 740.) It is well established that Senate Bill No. 567 does not contain a provision intending only prospective application, and therefore applies to all cases not yet final on January 1, 2022. (*People v. Dunn* (2022) 81 Cal.App.5th 394, 402, review granted Oct. 12, 2022, S275655; *People v. Lopez* (2022) 78 Cal.App.5th 459, 465.)

Barriga argues his case was not final on January 1, 2022, and that he presented evidence of trauma which would require the trial court to exercise its discretion pursuant to section 12022, subdivision (b)(6)(A).

We agree that Barriga's case was not final as of January 1, 2022, and the amendments enacted by Senate Bill No. 567 retroactively apply to his case. The Attorney General likewise concedes that remand is required. Barriga is entitled to a sentencing where the trial court is afforded the opportunity to exercise its informed discretion. We will therefore remand this matter back to the lower court for a resentencing hearing.

14.

## DISPOSITION

The sentence is vacated and the matter remanded for a new sentencing hearing. The judgment is otherwise affirmed.

SNAUFFER, J.

WE CONCUR:

LEVY, Acting P. J.

DE SANTOS, J.