Filed 1/30/25  P. v. Lopez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083071 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF2202601) |
| CARLOS ALBERTO LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Francisco Navarro, Judge.  Affirmed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Carlos Alberto Lopez appeals from his convictions for numerous sex crimes against his two nieces.  He claims the trial court failed to sua sponte

instruct the jury on the limited use of child sexual abuse accommodation syndrome (CSAAS), and his trial counsel was deficient in failing to request such an instruction. Lopez also contends the trial court incorrectly instructed the jury and abused its discretion because it allowed the charged offenses regarding one niece to be used as propensity evidence regarding the other. Finally, he argues the cumulative effect of the claimed errors denied him due process and a fair trial. Finding no merit to these contentions, we affirm the conviction.

## II. BACKGROUND

Between 2014 and 2017, approximately, Patricia I. lived with her two daughters, JD and MD,[1] and her brother, Lopez. JD is intellectually disabled and autistic, with the mental capacity of an eight- or nine-year-old. Lopez was responsible for taking care of JD and MD while Patricia worked, and he was aware of JD's diagnoses.

Between late 2016 and early 2017, Lopez had vaginal intercourse with JD at least four times, and the two had anal sex once. JD was 18 years old at the time. Patricia kicked Lopez out of her house in January 2017 when she discovered the abuse.

Lopez also touched MD's vagina on two separate occasions between 2014 and 2016. MD was six to nine years old during that period. In a forensic interview in 2017 when MD was nine, she explained the first incident happened when she was on the computer in her sister's room, and the second occurred on Lopez's bed after he had given her gum. Both times, Lopez touched MD's vagina underneath her clothes. MD also told the interviewer there may have been a third time when she was eating oranges

---

[1] The record identifies the victims as "Jane Doe" and "Mary Doe," so we will refer to them as "JD" and "MD."

in Lopez's room, and Lopez tried to touch her another time when she was walking out of the kitchen. MD stated she told Patricia about the abuse twice, once while they were walking their dog and another time in the car. MD said Patricia did nothing the first time, and after the second, Patricia tried to keep Lopez away from MD and said Lopez would be going away soon.

Lopez admitted the offenses against JD when interviewed by the police, claiming they were initiated by JD. However, Lopez denied touching MD in a subsequent police interview.[2]

In 2023, the Office of the Riverside County District Attorney charged Lopez with four counts of rape of a disabled person (Pen. Code, § 261, subd. (a)(1); counts 1–4); four counts of incest (*id*., § 285; counts 5–8); one count of sodomy with a disabled person (*id*., § 286, subd. (g); count 9); two counts of lewd acts on a child under 14 (*id*., § 288, subd. (a); counts 10–11); and one count of continuous sexual abuse of a child under 14 (*id*., § 288.5; count 12).

At Lopez's trial in 2023, MD testified that Lopez touched her vagina under her clothes twice. She described the incident while she was on the computer in her sister's room, as well as the one on Lopez's bed after he bought her gum. MD also testified that she told Patricia about these incidents while they were in the car but did not remember a disclosure while they were walking their dog. MD stated that in response, Patricia barricaded JD and MD in Patricia's room with a chair while she worked nights. MD said she also divulged the abuse to Patricia when Patricia questioned MD after discovering what happened between Lopez and JD.

Patricia testified at trial as well, stating that she asked MD about Lopez after learning about Lopez's abuse of JD. MD responded that Lopez

---

[2] Videos of both interviews were played for the jury.

touched her inappropriately and that she tried to tell Patricia earlier, but Patricia did not understand. Patricia did not recall any earlier disclosures and would have immediately removed Lopez from the home upon learning of the abuse. Patricia also did not remember blocking her bedroom door with a chair.

Lopez's jury also heard testimony from Denise Rodriguez Bowman, the director of forensic services and victim advocacy at the Barbara Sinatra Children's Center. Based on research and her experience, Bowman testified that it is common for child sexual abuse victims not to immediately report abuse. Instead, disclosure is often delayed and occurs through a process affected by numerous variables such as fear, embarrassment, and relation to the perpetrator. Sometimes disclosures are purposeful as part of an effort to stop the abuse, while other times these statements are accidental. There are also partial disclosures, where the victim waits to see how it will be received and will disclose more if she or he feels supported. Bowman also explained that children may lie, fabricate, or confuse things.

Bowman was formerly a child forensic interviewer, and she interviewed both JD and MD in 2017. Audio of those interviews were played for the jury, and counsel on both sides questioned Bowman about her interview of JD.[3] Neither side questioned Bowman about the MD interview.

After the People rested, Lopez successfully moved to dismiss the continuous sexual abuse charge, count 12, pursuant to Penal Code section 1118.1. Lopez then presented expert testimony from clinical psychologist Dr. Roberto Flores de Apodaca (Dr. Flores). Dr. Flores

---

[3] We omit a summary of JD's forensic interview and trial testimony. Lopez conceded the JD incest charges at trial; his only defense to the rape charges was that JD consented, and he does not challenge his convictions regarding JD on appeal.

interviewed Lopez and determined he had a low recidivism risk for sexual offenses, but that conclusion was not predictive of whether Lopez would be attracted to a nine-year-old girl.  Dr. Flores explained that there are two types of pedophiles:  fundamental and regressed.  Fundamental pedophiles are only attracted to minors, and Lopez did not likely fall into that category based on his history.  Regressed pedophiles have age-appropriate sexual histories, but then regress in response to stressors because they feel they cannot adequately relate to age-appropriate partners.  Regressed pedophiles commonly act out sexually against household members that are minors, mentally handicapped, or dependent.  Lopez matched the criteria of a regressed pedophile at the time of the offenses because he was likely clinically depressed, drinking daily, struggling financially, and he lost his house and wife.

After the close of evidence, the People asked the trial court to instruct the jury with CALCRIM No. 1191B as follows:

> The People presented evidence that the defendant committed the crimes of rape of a disabled woman as charged in Counts 1, 2, 3, and 4; sodomy of a disabled person as charged in count 9, and lewd act on a minor under 14 as charged in counts 10 and 11.
>
> If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the other sex offenses charged in this case.
>
> If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of

5

another crime. The People must still prove each charge beyond a reasonable doubt.

The People argued the instruction was proper because propensity evidence was admissible in this case under both Evidence Code sections 1108 and 352.[4] Counsel for Lopez argued that any prosperity evidence would be unduly prejudicial and had little probative value.

Acknowledging its discretion under section 352, the court stated, "the evidence is already in, so there's not an undue consumption of time," the instruction is "not going to confuse the jury" because it "is very clear that they have to consider each charge beyond a reasonable doubt," and the propensity evidence is "highly probative, so I don't think that the prejudice it -- it outweighs the probative value." The trial court therefore instructed the jury as requested by the People.

The trial court also instructed the jury regarding expert testimony with CALCRIM No. 332, which explained that "[t]he meaning and importance of any opinion" was for the jury to decide. Lopez did not ask for any additional instructions regarding expert testimony.

---

[4] All further undesignated statutory references are to the Evidence Code.

Section 1108, subdivision (a) states, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [the general bar against character evidence], if the evidence is not inadmissible pursuant to Section 352."

Section 352 states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

6

The jury found Lopez guilty on counts one through 11.  As aggravating sentencing factors, Lopez admitted that JD and MD were particularly vulnerable victims and that he took advantage of his position of trust.  (Cal. Rules of Court, rule 4.21(a)(3) & (11).)  The trial court sentenced Lopez to 14 years in prison.[5]  Lopez's timely appeal followed.

## III. DISCUSSION

### A.  *The Trial Court Did Not Have a Sua Sponte Duty to Give a Limiting Instruction Regarding Bowman's Testimony*

Lopez argues that while Bowman did not refer to CSAAS by name, she testified extensively about the syndrome.[6]  He therefore contends the trial court had a sua sponte duty to instruct the jury regarding the limited use of CSAAS testimony, and the failure to do so was prejudicial regarding the MD-related counts.

"Expert testimony about CSAAS 'is inadmissible to prove that a child has been abused because the syndrome was developed not to prove abuse but to assist in understanding and treating abused children.  However, . . . such evidence may be admitted to dispel common misconceptions the jury may hold as to how such children react to abuse.' " (*People v. Mateo* (2016) 243 Cal.App.4th 1063, 1069 (*Mateo*).)

Only one published decision expressly imposes a sua sponte instructional duty regarding CSAAS testimony.  (*People v. Housley* (1992)

---

[5]    Lopez's sentence consisted of six years on count 1, and four consecutive two-year terms for counts 2, 3, 9, 10.  The trial court imposed concurrent terms on the remaining counts, staying the sentences on counts 5 through 8 pursuant to Penal Code section 654.

[6]    Contrary to the People's contention, we agree with Lopez that Bowman's testimony addressed CSAAS's concepts although she did not mention the syndrome by name.

6 Cal.App.4th 947, 958–959.)  However, as explained in a more recent decision, *Housley* is inconsistent with "statutory and decisional law." (*Mateo, supra,* 243 Cal.App.4th at p. 1074.)

First, pursuant to section 355, and as consistently applied by our Supreme Court,  " ' "Absent a request, a trial court generally has no duty to instruct as to the limited purpose for which evidence has been admitted." ' " (*Mateo, supra,* 243 Cal.App.4th at p. 1071.)

Second, "the Legislature has determined that only one instruction need be given sua sponte on expert testimony" in criminal cases.  (*Mateo, supra,* 243 Cal.App.4th at p. 1072.)  That instruction, set forth in in Penal Code section 1127b, informs the jury it must determine the weight to be given to expert testimony and states, "[n]o further instruction on the subject of opinion evidence need be given."

Third, *Housley*, is "at odds with our Supreme Court's decision in [*People v. Humphrey* (1996)] 13 Cal.4th 1073." (*Mateo, supra,* 243 Cal.App.4th at p. 1073.)  There, the California Supreme Court "repeatedly referred to the trial court's duty to give a limiting instruction on the use of [intimate partner battering and its effects[7]] evidence on request," and suggested that such "an instruction would be discretionary." (*Ibid.*)  Intimate partner battering and its effects "is analogous to CSAAS," and there is "no reason why a duty to instruct should be imposed in one situation and not the other." (*Ibid.*)

Finally, "the lone decision arguably consistent with *Housley*," which came from a prior panel of this court, "does not expressly discuss" whether a limiting instruction is required to be given sua sponte. (*Mateo, supra,* 243 Cal.App.4th at p. 1073, citing *People v. Bowker* (1988) 203 Cal.App.3d

---

[7]      " 'Intimate partner battering and its effects' " was formerly known as " 'battered women's syndrome.' "  (§ 1107, subd. (f).)

385, 394.) And "[a]ny doubt as to the intent of the *Bowker* court has been eliminated, because the same court that decided *Bowker* held in three subsequent cases that the limiting instruction must be given [only] 'if requested.'" (*Mateo*, at p. 1073, quoting and citing *People v. Stark* (1989) 213 Cal.App.3d 107, 116; *People v. Sanchez* (1989) 208 Cal.App.3d 721, 735; *People v. Bothuel* (1988) 205 Cal.App.3d 581, 587–588.)

Reviewing the issue independently (*Mateo, supra,* 243 Cal.App.4th at p. 1071), we agree with *Mateo*'s analysis and conclude that a trial court does not have a sua sponte duty to give a limiting instruction on CSAAS evidence. Here, the trial court properly instructed the jury with CALCRIM No. 332, which complies with Penal Code section 1127b's requirements. (*Mateo*, at p. 1072.) In the absence of a request from Lopez, no further instruction on expert testimony was required, and the trial court did not err.

## B. *Lopez's Trial Counsel Was Not Ineffective*

Lopez contends his trial counsel was ineffective for failing to request a CSAAS limiting instruction.

The record does not indicate why Lopez's trial counsel did not request a limiting instruction regarding Bowman's testimony. Consequently, Lopez cannot prevail "'unless there could be no conceivable reason for counsel's acts or omissions.'" (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.) At least one conceivable reason exists: "competent counsel could rationally conclude that it would be counterproductive to request an instruction highlighting expert testimony supporting the victim's credibility." (*Mateo, supra,* 243 Cal.App.4th at p. 1076.) Lopez has therefore failed to show deficient performance, defeating his ineffective assistance of counsel claim.

## C. *The Trial Court Did Not Err by Instructing the Jury with CALCRIM No. 1191B*

9

Lopez argues the trial court erred by instructing the jury with CALCRIM No. 1191B because charged offenses should not be used as propensity evidence. However, as Lopez acknowledges, this argument contradicts the California Supreme Court's decision in *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*), which we are bound to follow.[8] (*People v. Meneses* (2019) 41 Cal.App.5th 63, 68.) We therefore find no error on this ground.

## D. *The Trial Court Did Not Abuse its Discretion in Allowing the Jury to Consider the Offenses Against JD for Propensity Purposes*

Lopez asserts the trial court abused its discretion by allowing the jury to use his offenses against JD as propensity evidence when determining his guilt regarding MD. Lopez claims the trial court failed to undertake the required section 352 analysis. He also argues the acts with JD lacked probative value because they were dissimilar to those with MD. Finally, Lopez contends the evidence regarding MD was weak, and the jury was tempted to convict him of the offenses regarding MD based on the stronger JD evidence.

Section 1108 "allows evidence of sexual offenses *charged in the current prosecution* to be used to show a propensity to commit *other* charged offenses in the same case." (*People v. Cruz* (2016) 2 Cal.App.5th 1178, 1185.) However, " '[e]ven where a defendant is charged with multiple sex offenses, they may be dissimilar enough, or so remote or unconnected to each other, that the trial court could apply the criteria of section 352 and determine that it is not proper for the jury to consider one or more of the charged offenses as

_____

8       Appellant raised this issue to request that the California Supreme Court reconsider its decision in *Villatoro* and to preserve his federal constitutional rights.

evidence that the defendant likely committed any of the other charged offenses.' " (*Villatoro*, *supra*, 54 Cal.4th at p. 1163.)

"[W]e review the admission of other acts or crimes evidence under Evidence Code section 1108 for an abuse of the trial court's discretion." (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104.) "We will not find that a court abuses its discretion in admitting such other sexual acts evidence unless its ruling ' "falls outside the bounds of reason." ' " (*Id*. at p. 1105.)

In assessing whether the charged offenses could be used as propensity evidence, the trial court cited its discretion under section 352, found no undue consumption of time or risk of confusion, and stated that any prejudice from the propensity evidence did not outweigh its probative value. Contrary to Lopez's claims, this record demonstrates the trial court conducted a section 352 analysis. (See, e.g., *Villatoro*, *supra*, 54 Cal.4th at p. 1168 [" '[W]e are willing to infer an implicit weighing [under section 352] by the trial court on the basis of record indications *well short* of an express statement.' "].)

Turning to the probative value of the propensity evidence, we start by recognizing that the Legislature has determined that evidence of other sex offenses "is ' "particularly probative" ' in sex cases." (*People v. Loy* (2011) 52 Cal.4th 46, 61.) As for the similarity between Lopez's offenses against JD and MD, "this circumstance, although relevant to the trial court's exercise of discretion, is not dispositive." (*Id*. at p. 63.) In any event, we find significant similarities. Both victims were Lopez's nieces, the offenses occurred during the approximately three-year period while Lopez lived with the victims and was responsible for their care, and although JD was older, she had the mental capacity of an eight- or nine-year-old. As explained by Dr. Flores, Lopez had the characteristics of a regressed pedophile, which is a person that

11

reverts to sexual acts with not only minor family members, but also those that are mentally handicapped or dependent.

We also disagree the jury was improperly tempted to convict Lopez of the MD offenses based on the incidents involving JD. First, the jury was already determining Lopez's guilt regarding JD, so the propensity evidence did not involve past unadjudicated offenses. Second, the evidence regarding MD was not weak as Lopez suggests. Although there were some discrepancies regarding MD's disclosures to her mother, MD consistently described the two incidents of abuse during her forensic interview and at trial. Lopez's own expert also testified that Lopez met the criteria of a regressed pedophile at the time of the offenses, and he was unable to conclude that Lopez was not attracted to nine-year-old girls.

Finally, the trial court's instructions did not permit the jury to convict Lopez of the MD offenses based simply on its guilty verdicts on the JD counts. The trial court instructed the jury that it must first determine beyond a reasonable doubt that Lopez committed a charged sex offense, and then it "may, but [is] not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the other sex offenses charged in this case." The trial court further explained that propensity evidence "is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge beyond a reasonable doubt." We presume the jury understood and followed these instructions. (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 969.)

Under these circumstances, Lopez has failed to show that the trial court exceeded the bounds of reason by allowing the jury to consider the

12

offenses against JD as propensity evidence.  As such, the trial court did not abuse its discretion.[9]

## IV. DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


DO, Acting P. J.


CASTILLO, J.

---

[9]     Having found no error, we reject Lopez's claim of cumulative error.