Filed 4/13/26  P. v. Cruz-Hernandez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>OMAR HOMERO CRUZ-HERNANDEZ,<br><br>  Defendant and Appellant. | 2d Crim. No. B341266<br>(Super. Ct. No. 2023016056)<br>(Ventura County) |

Omar Homero Cruz-Hernandez appeals from the judgment after a jury convicted him of an unlawful act with a child 10 years old or younger (Pen. Code,[1] § 288.7, subd. (a); count 1), continuous sexual abuse of a child (§ 288.5, subd. (a); count 2), forcible rape (§ 261, subd. (a)(2); count 3), a lewd act on a child (§ 288, subd. (c)(1); count 4), and three counts of a lewd act on a child under the age of 14 (§ 288, subd. (a); counts 5, 6, & 7).  As to

_____

[1] Further unspecified statutory references are to the Penal Code.

counts 2, 3, 5, 6 and 7, the jury found true the allegations that Cruz-Hernandez committed a sexual offense against more than one victim (§ 667.61, subd. (e)(4)) and against a victim under the age of 14 (§ 667.61, subd. (j)(2)). The jury also found true he committed rape on a minor 14 years or older as to count 3 (§ 264, subd. (c)(2)). He was sentenced to six consecutive 25 year-to-life terms for counts 1, 2, 3, 5, 6, and 7 and a consecutive two-year term on count 4.

Cruz-Hernandez contends his convictions for counts 5, 6, and 7 must be reversed because the trial court prejudicially erred in not providing a limiting instruction regarding the prosecution's expert witness testimony. He also contends, and the Attorney General concedes, the court erred in issuing a postconviction protective order under section 136.2, subdivision (i)(1), which included nonvictims. We agree the protective order must be amended but otherwise affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

*Counts 1-4 (J.G.)*

J.G. was born in November 2008. She lived with her mother E.R., stepfather Cruz-Hernandez, and her four siblings. When J.G. was 10 years old, Cruz-Hernandez called her to his bedroom, told her to lay down, pulled down her pants, and put his penis in her anus. J.G. began to cry and told him to stop, but he continued.

When J.G. was between 11 and 14 years old, Cruz-Hernandez regularly touched her buttocks and breasts when he hugged her. When she was 11 years old, he touched her about once a month, and by the time she was 13 years old, he touched her almost every day.

In June 2023, J.G. was 14 years old. One night, she was asleep in her bed with her two siblings when she woke up and saw Cruz-Hernandez on top of her. Her pants and his pants were down, and his penis was inside her vagina. J.G. began to cry, told him to stop, and pushed him off. In the following few days, Cruz-Hernandez continued to touch J.G.'s breasts. On one occasion, J.G. slapped his hand away, called him a rapist, and ran away from home. She went to her mother's friend's house and told her what happened. They called the police. J.G. told the police that Cruz-Hernandez touched her "boobs" and that this had happened several times.

Officer Juan Morales interviewed Cruz-Hernandez. The interview was recorded and presented to the jury. During the interview, Cruz-Hernandez admitted touching J.G.'s breasts the day before. He later admitted touching her breasts "a lot" and more than 20 times in the past. He said the first time he touched her breasts was when she was about 9 years old. He also admitted having sexual intercourse with J.G. earlier that week and five years before.

### Counts 5-7 (M.C.)

Police interviewed seven-year-old M.C., who is J.G.'s sister. M.C. was born in September 2015, and her father is Cruz-Hernandez. During the first interview, M.C. told the police that when her father hugs her, he "squeeze[s]" her "boobs." She also said he grabs and pinches them. She demonstrated Cruz-Hernandez's actions on a chair and said he had touched her six times.

During her second interview, M.C. initially denied Cruz-Hernandez touched her breasts. But she later said that her father had "pinched" her breasts while hugging her on three

occasions. She demonstrated on her knee how her father pinched her. She said the first time happened during the summer while she was eating. She told her siblings what happened and told them not to tell anyone because she was afraid her father would do something to her. She recalled her father pinching her breasts on a second occasion during the summer. She was alone in the room watching television when it happened, and she felt afraid. On a third occasion, M.C. was alone when her father told her to hug him. She said, "No," and he hugged her and pinched her breast. M.C. said she believed her father touched her three times.

During his recorded interview with Officer Morales, Cruz-Hernandez admitted touching M.C.'s breast two or three times.

*Expert testimony*

Clinical and forensic psychologist Dr. Mindy Mechanic testified as an expert on behalf of the prosecution. Dr. Mechanic testified that she did not meet with the victims in this case, and she was unaware of any facts or allegations specific to the case other than the fact that the case generally involved child sexual abuse. She testified she was a "blind witness" which meant she was "not privy to any facts of the case."

Dr. Mechanic testified generally about "counterintuitive victim behavior" which is the notion that "most people don't have factual understanding and knowledge about how victims respond to sexual crimes." She testified regarding some misconceptions the general public could have about how victims should respond in certain situations. Some misconceptions include that victims should fight back and resist their abuser, that they should make a disclosure right away, they should report to law enforcement soon after the incident, and they would not want to spend time

4

with their abuser.  She testified that when a child is abused by someone they know, the child can continue demonstrating loyalty to a person.  She also testified regarding some of the reasons why a child may not disclose and said that a child is less likely to disclose when the abuser has a close relationship with them.  Additionally, a child may recant or deny their abuse in a subsequent interview; a recantation is not necessarily reflective of a child being untruthful about the abuse.

Defense counsel requested the trial court instruct the jury with CALCRIM No. 303 which states: "During the trial, certain evidence was admitted for a limited purpose.  You may consider that evidence only for that purpose and for no other."  The trial court denied the request.

DISCUSSION

*Limiting instruction*

Cruz-Hernandez contends the trial court erred in denying his request for a limiting instruction for Dr. Mechanic's testimony.  The Attorney General concedes the trial court erred, but contends the error was harmless.  We agree the error was harmless.

Expert testimony regarding Child Sexual Abuse Accommodation Syndrome (CSAAS) is admissible for the "limited purpose of disabusing the jury of misconceptions as to how child victims react to abuse."  (*People v. Bowker* (1988) 203 Cal.App.3d 385, 392; *People v. Mateo* (2016) 243 Cal.App.4th 1063, 1069 (*Mateo*).)  It is "inadmissible when offered to prove that the complaining witness has in fact been raped."  (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300.)  Evidence Code section 355 provides that when evidence is admissible as to one party for one purpose and is inadmissible as to another party for another purpose, the

5

court *upon request* shall restrict the evidence to its proper scope *and instruct the jury accordingly.* In other words, the court shall give a limiting instruction if properly requested. (*People v. Dennis* (1988) 17 Cal.4th 468, 533; *Mateo, supra,* 243 Cal.App.4th at p. 1074 [limiting instructions on CSAAS testimony must be given upon request].)

We agree with the parties that Dr. Mechanic's testimony constituted CSAAS testimony because she spoke about the misconceptions regarding the reactions of child sexual abuse victims and common reactions an abused child may have. CSAAS testimony is "[e]xpert testimony on 'the common reactions of child molestation victims.'" (*People v. Julian* (2019) 34 Cal.App.5th 878, 885.) Thus, the trial court should have given a limiting instruction upon defense counsel's request.

We review the trial court's error in rejecting a limiting instruction under the *Watson*[2] standard. (*Mateo, supra,* 243 Cal.App.4th at p. 1074; *People v. Housley* (1992) 6 Cal.App.4th 947, 959 (*Housley*).) And here, we conclude the error in rejecting a limiting instruction was harmless. In *Mateo,* error in failing to give a limiting instruction on CSAAS testimony was harmless under similar circumstances. There, the appellate court concluded that where the "expert testifies regarding the behavior of abused children as a class, there is little, if any, chance the jury will misunderstand or misapply the evidence." (*Mateo,* at p. 1074.)

Here, Dr. Mechanic testified that she had not met or interviewed the victims and was not privy to the facts or allegations in this case. The prosecution also reminded the jury

_____

[2] *People v. Watson* (1956) 46 Cal.2d 818, 836.

6

in its closing argument that Dr. Mechanic was a "blind expert" and did not know the facts of the case. (See *Mateo*, *supra*, 243 Cal.App.4th at p. 1074 [expert stated he had not interviewed anyone in the case]; *Housley*, *supra*, 6 Cal.App.4th at p. 959 [expert twice told jurors that she had not met the victim and had no knowledge of the facts].) Dr. Mechanic only testified generally about the common reactions and behaviors of child abuse victims and the common misconceptions regarding such reactions. (See *Housley*, at p. 959 [failure to provide a limiting instruction was harmless where expert testimony was "couched in general terms" and described behavior common to abused victims "as a class"].)

Dr. Mechanic also clarified to the jury that her testimony was not itself evidence that any abuse occurred in this case, but instead it was to explain behaviors of child abuse victims and to counteract what people might believe based on their own ideas about how people react. Additionally, as in *Mateo*, the jury here was instructed with CALCRIM No. 332, which provides that the jury should consider expert opinions, but they were not required "to accept them as true or correct" and the "meaning and importance of any opinion" were for the jury to decide. (See *Mateo*, *supra*, 243 Cal.App.4th at p. 1074.) We presume the jury was able to understand, correlate, and follow these instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

The prosecution also presented compelling evidence of counts 5 through 7. M.C. told officers in both her first and second interviews that her father touched her breasts. In her second interview, she described three separate instances in which Cruz-Hernandez "pinched" her breasts while hugging her. Cruz-Hernandez also admitted that he touched M.C.'s breast two or three times. In our view, it is not reasonably probable that Cruz-

7

Hernandez would have obtained a more favorable verdict on counts 5 through 7 had the jury been provided with a limiting instruction regarding Dr. Mechanic's testimony.

*Protective order*

At sentencing, the trial court issued a criminal protective order which prohibited Cruz-Hernandez from contacting J.G. and M.C. but also his wife, E.R., and their other children, D.C., J.J.C., and J.A.C., for up to 10 years. Cruz-Hernandez contends the protective order must be amended to remove nonvictims. The Attorney General concedes error as to the inclusion of E.R., J.J.C., and J.A.C., but contends that the court properly included D.C. because she was a victim of the same crime, i.e., lewd acts upon a child (§ 288, subds. (a), (c)(1)) and continuous sexual abuse (§ 288.5, subd. (a)). We conclude the protective order must be modified to remove nonvictims.

Section 136.2, subdivision (i)(1) provides that when a "defendant has been convicted of . . . a crime that requires the defendant to register" as a sex offender, "the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime." The trial court does not have authority to restrain a defendant from contacting a person who was not a victim of the crime. (*People v. Pena* (2025) 113 Cal.App.5th 640, 648 (*Pena*).)

Although the Attorney General concedes, and we agree, that there is no evidence in the record to support that E.R., J.A.C., or J.J.C. were victims of the crimes for which Cruz-Hernandez was convicted in counts 1 through 7, they contend that D.C. is "a victim" because both J.G. and M.C. said that Cruz-Hernandez touched and pinched D.C.'s breasts. We conclude otherwise because D.C. was not a victim of counts 1 through 7.

Recently, two cases have interpreted the language of section 136.2, subdivision (i)(1), as amended in 2018 (Stats. 2017, ch. 270, § 1), and which applied to Cruz-Hernandez at sentencing. In *Pena*, our colleagues in Division 7 observed that the " 'term "victim" under section 136.2 is not limited to only those individuals named in the charge for which the defendant was convicted.' . . . As stated, under section 136, subdivision (3), a 'victim' may include anyone 'with respect to whom there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated.' Thus, read in conjunction with section 136.2(i)(1), a 'victim of the crime' may include a person not named in the count on which the defendant was convicted, so long as that person was a 'victim' of the same crime." (*Pena, supra*, 113 Cal.App.5th at p. 647.)

Similarly, the Fifth District in *People v. Walts* (2025) 112 Cal.App.5th 127, 142 (*Walts*) concluded that "it is possible for a protective order to protect more than one person/victim" and the statute "does not require that a person be expressly identified in a charging instrument in order to be considered a 'victim.' " (*Id.* at pp. 143–144 & fn. 4.)

*Walts* further interpreted the phrase "of the crime" to refer to a specific or particular crime for which the defendant has been convicted "due to the use of the definite article 'the.' " (*Walts, supra*, 112 Cal.App.5th at p. 143.) "[I]t follows . . . that a protective order is available for one or more persons as long as each person is a 'victim' of any one of the specifically enumerated crimes under section 136.2(i)(1) for which the defendant has been convicted. [Citation.] That is, so long as there is reason to believe that an enumerated section 136.2(i)(1) offense for which the defendant was convicted 'is being or has been perpetrated or

9

attempted to be perpetrated' against a particular person, that person is a 'victim' who may be protected by a section 136.2(i)(1) protective order." (*Ibid.*) Several courts have vacated protective orders where the persons listed in the protective orders either were not present during the incident or did not suffer "harm as a result" of the offense for which the defendants were convicted. (See e.g., *Pena, supra,* 113 Cal.App.5th at pp. 648–649 ["Nathaly . . . was not present when Pena committed sexual battery against Evelin"]; *Walts,* at p. 144 [the defendant's ex-wife and the other children did not suffer continuous sexual abuse]; *People v. Lopez* (2022) 75 Cal.App.5th 227, 237 [the minor children "were present but asleep" during incident].)

Here, the record does not reflect that D.C. was a victim of *the* crimes for which Cruz-Hernandez was convicted. The amended information and jury verdict forms specify that count 2 alleged continuous sexual abuse upon J.G. occurring between November 2018 through November 2019, count 4 alleged a lewd act upon J.G. ("[t]ouching J.G.'s breasts on or about June 23, 2023"), and counts 5, 6, and 7 alleged lewd acts upon M.C. (the first, second, and third time touching M.C.'s breasts). The prosecution did not seek charges pertaining to acts against D.C., nor did they argue in their closing arguments that any of the charges involved acts against D.C. Instead, the prosecutor told the jury that counts 1 through 4 pertain to J.G. and counts 5 through 7 involve the first, second, and last time Cruz-Hernandez touched M.C.

Although J.G. and M.C. said Cruz-Hernandez touched D.C.'s breasts, they did not specify when it occurred. As such, there was no evidence such act occurred within the specific time period alleged in the information. (See *Walts, supra,* 112

10

Cal.App.5th at p. 144 [the information alleged the crime occurred between February 2012 and February 2017 against T.W., and no other time frame was alleged or other abused person identified].) Because the only victims of the crimes for which Cruz-Hernandez was convicted are J.G. and M.C., section 136.2, subdivision (i)(1) requires that the protective order be modified to remove the nonvictims E.R., D.C., J.J.C., and J.A.C.

DISPOSITION

The postconviction protective order is vacated. We direct the trial court to amend the protective order to remove E.R., D.C., J.J.C., and J.A.C. as protected persons. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


YEGAN, Acting P. J.


CODY, J.

11

Catherine Voelker, Judge

Superior Court County of Ventura

_____

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Colleen M. Tiedemann and Zachary John Crvarich, Deputy Attorneys General, for Plaintiff and Respondent.