Filed 4/28/26  P. v. Gallardo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D087442 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF2101993) |
| WILFRED GALLARDO, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Riverside County, Charles G. Rogers, Judge.  (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

Wilfred Gallardo appeals from a judgment after a jury convicted him of multiple sex crimes committed against a minor.  The sole issue he raises on appeal is that the trial court erred by giving a modified version of the current CALCRIM No. 1193 on the use of expert testimony concerning child sexual abuse accommodation syndrome (CSAAS).  Finding no reversible error, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Incidents Preceding May 2021*

E.A. was born in January 2011.  She was 13 years old at the time of her trial testimony.  E.A.'s mother started dating Gallardo when E.A. was around eight years old.  Within months, Gallardo moved into a one-bedroom apartment with E.A. and her mother.  E.A. slept in the bedroom and her mother and Gallardo slept in the living room.

According to E.A., Gallardo began touching her lewdly shortly after they all began living together and continued molesting her for over a year thereafter.  The molestations occurred when her mother was asleep or not at home.  Gallardo touched, grabbed, and rubbed E.A.'s vagina, anus, breasts, back, and stomach.  He touched her "any time he got a chance to."  Gallardo touched E.A. over and under her clothes and sometimes after removing her clothes.  He touched her vagina more than 10 times.  He put his fingers inside her anus and caused her pain, usually while lying behind her.  He also touched E.A. with his penis, including rubbing his penis on her buttocks.

E.A. initially testified that Gallardo never tried to insert his penis into her anus.  She later testified that during a period when her mother was gone for a week or two, Gallardo did put a small part of his penis inside her anus.

2

Gallardo told E.A. he would hurt her and her mother if she said anything. E.A. kept quiet and never told Gallardo to stop because she was afraid of his threats.

In 2019, E.A.'s mother was arrested and pled guilty to assaulting Gallardo by throwing nail polish at him. When interviewed by child protective services after the 2019 assault, E.A. said Gallardo had never hurt or abused her. E.A.'s mother and Gallardo reconciled and continued living together after this incident.

B. *Incident of May 2021*

One night in May 2021, when E.A. was 10 years old, E.A. and Gallardo were sleeping in E.A.'s bedroom because E.A.'s grandfather was spending the night and sleeping in the living room. When E.A.'s mother awoke, she noticed the bed was shaking. She saw Gallardo sitting on the side of the bed touching E.A.'s vagina and masturbating. E.A. looked terrified. E.A. recalled the incident differently. According to E.A., Gallardo was rubbing his penis on her ankle when her mother awoke.

E.A.'s mother immediately removed her from the room and took her outside. She began questioning E.A. E.A. told her Gallardo had been touching her for a long time. She said it had started after they all moved in together, and she had not said anything because she was worried, scared, and felt threatened. E.A. did not initially disclose all the details to her mother. When E.A.'s mother confronted Gallardo, he said, "You act like your daughter has never had sex before."

E.A.'s grandfather called 911. When law enforcement arrived, E.A. did not want to talk about the abuse. She underwent a medical examination and had her external genitalia swabbed for DNA. Gallardo's DNA was present on the swab. There was no way to determine how Gallardo's DNA got there, and

3

it could have been transferred through clothing, bedding, or some other household item. No injuries were discovered in E.A.'s medical examination.

In a forensic interview, E.A. made some statements that were inconsistent with her trial testimony, including that Gallardo had only touched the outside of her anus. She also did not mention anything about threats during the interview. She told the interviewer she had "a gut feeling" that Gallardo would do something bad to her if she said anything.

E.A. became closed off and depressed after the abuse came to light.

C. *CSAAS Evidence and Related Instructions and Argument*

Before trial, the prosecution filed a motion in limine seeking to admit "[e]xpert testimony about child molestation victims as a class to dispel myths and misconceptions about child molestation victims and to restore the victim's credibility." The moving papers identified the specific myths and misconceptions the prosecution intended to dispel, which included the following: (1) that a molestation did not occur if the victim did not disclose immediately, (2) that a molestation did not occur if the victim did not remember specifics regarding dates and times, and (3) that only some of the acts of molestation occurred if the victim disclosed gradually over time. The prosecution also noted that the expert would not be offering any "syndrome" evidence, would not give an opinion that the alleged molestation in fact occurred, and would not vouch for the credibility of the victim.

The defense opposed the admission of this evidence on the ground that it risked confusing and prejudicing the jury.

The trial court granted the People's motion to admit the CSAAS testimony to dispel common misunderstandings and beliefs about how victims of child molestation behave. The court stated it intended to give a limiting instruction to the jury on this evidence and invited both sides to

4

propose a limiting instruction or a modification of the standard CALCRIM instruction on CSAAS evidence.

The prosecution called Dr. Martha Rogers as its CSAAS expert, although neither she nor the prosecutor used the word "syndrome" or the phrase "child sexual abuse accommodation syndrome" during her testimony. Dr. Rogers testified that she did not know anything about the facts of this case. She told the jury she was merely providing general information about victims of child abuse as a class that "may" or "may not" be relevant to this specific case, and she was "not here to taint or throw the case, if you will, for either side."

According to Dr. Rogers, the vast majority of abuse cases involve a perpetrator whom the victim knows, such as a family member, neighbor, babysitter, coach, or teacher. Younger children may not be aware that what is happening to them is abuse, and they may consider it just part of their home life. When they grow older and begin to understand, their emotional reactions vary. Some children withdraw, others act out, and others avoid thinking about what is happening.

Most children delay disclosing such abuse and many do not disclose until they are adults. They may be fearful, confused, ashamed, or upset, and they may worry about upsetting the family. They may also have experienced overt or implicit threats that bad things will happen if they disclose.

When children do disclose, their initial disclosures may be incomplete or limited in detail, especially if they are younger. If the abuse occurred repeatedly over a period of time, the events can become blurred in the child's memory, making it difficult to recall specific details of a single incident. Moreover, the trauma of the abuse itself can result in changes in the memory process, particularly if the abuse occurred repeatedly. The child may adapt

5

to the situation by trying not to think about it or talk about it, which could affect their memory of the details.

On cross-examination, Dr. Rogers confirmed that her testimony could "[a]bsolutely not" be used to determine whether abuse actually occurred in this case. Defense counsel asked, "So, Doctor, your testimony today provides very helpful context and understanding to these general behaviors, but just for the jury, nothing you say can prove whether the prosecution's allegations are true or correct?" Dr. Rogers responded by telling the jury, "That's your job, and you're perfectly capable of doing it."

Dr. Rogers testified on cross-examination that delayed disclosure and inconsistent statements also occur when children have *not* been abused. Inconsistent statements can be caused by confusion or pressure, especially for younger children. Children can also make mistaken or fabricated allegations of abuse. Younger children can be susceptible to suggestibility or leading questions or indoctrination. If the major details of a child's story changes over time, it could be a result of suggestive questioning by the parent. Children can be influenced by the emotions and reactions of the adults around them, such as their parents. If a parent is upset or angry, the child might feel pressured to say something to please the parent. If a mother repeatedly questions her daughter about being touched, it can influence the child's responses, especially if they are younger.

Immediately after Dr. Rogers testified, the court on its own initiative instructed the jury as follows:

> "Folks, you'll get an instruction that helps you evaluate
> this testimony, and [the] purpose of Dr. Rogers' testimony
> when we get into the jury instructions. For now, let me say
> that her testimony is provided for you to help give you some
> factors that may help you evaluate (Jane Doe E.A.)'s

6

credibility, it is not evidence that Mr. Gallardo committed any crimes charged in this case. Don't consider it as some kind of profiling evidence against him. Moreover, I should add, Dr. Rogers is not directly vouching for (Jane Doe E.A.)'s credibility. Instead she's trying to identify factors that may help you evaluate the weight to give (Jane Doe E.A.)'s testimony.

"The law in regards to this kind of testimony, identifying and dispelling common misconceptions or myths that we might hold, for example, if it might be a case that we would think a child would certainly remember details of bad acts done to them or a child would not keep this to themselves but disclose it or a child would never try to forget or suppress that kind of evidence. Again, what she's trying to do is explain to you how those factors may or may not play in so that you can evaluate (Jane Doe E.A.)'s testimony. Please apply her testimony only to evaluate (Jane Doe E.A.)'s credibility, not as direct evidence of Mr. Gallardo's guilt."

During the conference on jury instructions, the trial court noted that the prosecutor and defense counsel had collaborated on a modified version of CALCRIM No. 1193 to give to the jury with respect to Dr. Rogers's testimony.[1] Both counsel confirmed that this instruction was acceptable to

---

[1] The unmodified current version of CALCRIM No. 1193 reads as follows: "You have heard testimony from ____ *<insert name of expert>* regarding child sexual abuse accommodation syndrome. [¶] Child sexual abuse accommodation syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse. [¶] ____'s *<insert name of expert>* testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against (him/her) [or any conduct or crime[s] with which (he/she) was not charged]. [¶] You may consider this evidence only in deciding whether or not ____'s *<insert name of alleged victim of abuse>* conduct was consistent with the conduct of someone who has

7

the parties. As modified, this instruction eliminated from CALCRIM No. 1193 any reference to the word "syndrome" or the phrase "child sexual abuse accommodation syndrome." The trial court instructed the jury with this modified version of CALCRIM No. 1193 as follows:

> "Testimony by Dr. Rogers is offered and may be considered by you only for the purpose of understanding and explaining the behavior of Jane Doe (E.A.) in this case and not as proof that the molestation occurred as to Jane Doe (E.A.) [¶] Dr. Rogers's testimony about the behavior of alleged victims of child molestation is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not Jane Doe (E.A.)'s conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

In discussing Dr. Rogers's testimony in closing argument, the prosecutor told the jury: "She's not diagnosing anybody in this case or making an opinion on the case, that's your job." In defense counsel's closing argument, he relied on Dr. Rogers's testimony that children are vulnerable to suggestibility, influence, and false memories. Neither attorney referred to CALCRIM No. 1193 in closing argument.

D. *Verdict and Sentence*

In a jury trial, the jury convicted Gallardo of one count of sodomy with a child ten years of age or younger (Pen. Code,[2] § 288.7, subd. (a)), seven counts of lewd and lascivious acts on a child under the age of 14 (§ 288, subd. (a)), and two counts of lewd and lascivious acts by force or fear on a child under the age of 14 (§ 288, subd. (b)). The court sentenced Gallardo to a

---

been molested, and in evaluating the believability of the alleged victim."

[2] All further undesignated statutory references are to the Penal Code.

8

determinate term of 34 years plus an indeterminate term of 25 years to life in state prison.

DISCUSSION

On appeal, Gallardo does not challenge the admissibility of Dr. Rogers's CSAAS testimony. However, he contends the court committed reversible error by giving the last sentence of CALCRIM No. 1193 as follows: "You may consider [Dr. Rogers's testimony] only in deciding whether or not Jane Doe (E.A.)'s conduct was *consistent with* the conduct of someone who has been molested, and in evaluating the believability of her testimony." (Italics added.) Gallardo asserts that the phrase "consistent with" in the current version of CALCRIM No. 1193—which replaced the phrase "not inconsistent with" in the prior version—improperly allowed the jury to use the CSAAS testimony as profile evidence to identify E.A. as a victim of child abuse. He also claims that this error violated his Fourteenth Amendment right to a fair trial by creating an impermissible inference of guilt.[3]

A divided panel of this court recently rejected this same challenge to the current version of CALCRIM No. 1193. (See *People v. Page* (2025) 114 Cal.App.5th 1022, 1030–1031 (*Page*) [finding no error in "consistent with" language because it is synonymous with "not inconsistent with"]; but see *id.* at pp. 1035–1036 (conc. opn. of Kelety, J.) [concluding that although the distinction "may be subtle," the "consistent with" language could be

---

[3]    As noted, Gallardo's counsel agreed to the version of CALCRIM No. 1193 given at trial, including the "consistent with" language. On appeal, he argues that if his claim of error was forfeited, his counsel was ineffective in failing to object to this language. We exercise our discretion to overlook any forfeiture and decide the issue on the merits. Accordingly, we do not address Gallardo's claim of ineffective assistance of counsel.

9

misunderstood "to mean that . . . the abuse *in fact occurred*" but finding any such error harmless when considered with "the other instructions given to the jury"].) The People urge us to follow the majority opinion in *Page*. Gallardo contends *Page* was wrongly decided and argues we should follow the concurring opinion.

Although one member of this panel authored the concurring opinion in *Page*, we need not weigh in on this debate as a panel because we conclude there is no reasonable possibility the jury could have been misled when considering the *totality* of the record before us, including the CSAAS testimony given by Dr. Rogers, the other admonitions and instructions to the jury, and the closing arguments. As we explain below, there was no instructional error when considering the record as a whole, and even if there were, it would be harmless under either the *Watson* standard of prejudice for state-law errors (*People v. Watson* (1956) 46 Cal.2d 818, 836–837) or the *Chapman* standard for federal constitutional errors (*Chapman v. California* (1967) 386 U.S. 18, 24).

"[I]t has long been held that in a judicial proceeding presenting the question whether a child has been sexually molested, CSAAS is admissible evidence for the limited purpose of disabusing the fact finder of common misconceptions it might have about how child victims react to sexual abuse." (*In re S.C.* (2006) 138 Cal.App.4th 396, 418.) Expert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused but may be admitted in appropriate cases to disabuse jurors of commonly held misconceptions about child abuse. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300–1301.)

10

As this court has emphasized, CSAAS evidence may not be used "as a *predictor* of child abuse." (*People v. Bowker* (1988) 203 Cal.App.3d 385, 393 (*Bowker*).) "It is one thing to say that child abuse victims often exhibit a certain characteristic or that a particular behavior is *not inconsistent* with a child having been molested. It is quite another to conclude that where a child meets certain criteria, we can predict with a reasonable degree of certainty that he or she has been abused. The former may be appropriate in some circumstances; the latter . . . clearly is not." (*Ibid.*, italics added.) "The evidence is admissible *solely* for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested." (*Id.* at p. 394.)

When the prosecution presents CSAAS testimony at trial, the defendant is entitled to a limiting instruction stating that "(1) such evidence is admissible solely for the purpose of showing the victim's reactions as demonstrated by the evidence are *not inconsistent* with having been molested; and (2) the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true." (*People v. Housley* (1992) 6 Cal.App.4th 947, 959 (*Housley*), italics added.) Although *Housley* held that such a limiting instruction must be given sua sponte, another court has disagreed and ruled it need only be given upon request. (*People v. Mateo* (2016) 243 Cal.App.4th 1063, 1071–1074.)

CALCRIM No. 1193 is the standard jury instruction used to inform the jury of these principles. Before 2022, CALCRIM No. 1193 used the "not inconsistent with" language of *Bowker* and *Housley* by stating that the jury may consider CSAAS testimony "only in deciding whether or not [the alleged victim]'s conduct was *not inconsistent* with the conduct of someone who has been molested, and in evaluating the believability of (his/her) testimony."

11

(Italics added.)  In 2022, however, the Judicial Council modified this instruction in response to two unpublished Court of Appeal cases which "addressed a challenge that this instruction is potentially misleading because it contains the instructional phrase 'was not inconsistent with' and does not otherwise adequately state the permissible use of this type of expert testimony."  (Judicial Council of Cal., Advisory Com. on Criminal Jury Instructions Rep., Jury Instructions: Criminal Jury Instructions (Sept. 20, 2022) p. 4.)  As modified in 2022, "[t]he double negative was removed and replaced with the 'consistent with' phrasing that is in the current version, and the second paragraph stating that CSAAS evidence 'is offered only to explain certain behavior of an alleged victim of child abuse' was added 'to clarify the distinction between the proper and improper use of the evidence.' " (*Page, supra*, 114 Cal.App.5th at p. 1031.)

We need not determine whether the "consistent with" language of revised CALCRIM No. 1193 is erroneous or misleading when considered in isolation.  In assessing a claim of instructional error, we must look to the instructions as a whole and the entire record of trial, including the arguments of counsel.  (*People v. Mason* (2013) 218 Cal.App.4th 818, 825.)  We must also review the instructions as a whole and the entire record in determining prejudice.  (See, e.g., *People v. Barrett* (2025) 17 Cal.5th 897, 993.)  Based on our review of the entire record, we conclude there is no reasonable possibility the jury would have understood the instructions to mean it was permitted to use the CSAAS testimony as profile evidence to draw a conclusion that E.A. must have suffered abuse.

Dr. Rogers herself emphasized that she knew nothing about the facts of this case and her testimony could not be used to determine whether the alleged abuse occurred or the prosecution's allegations were true.  She also

testified that the CSAAS characteristics she was testifying about, such as delayed disclosure and inconsistent statements, occur when children *have not* been abused as well. Thus, the jury was made aware that these characteristics cannot be used as a diagnosis of abuse. (See *Bowker, supra,* 203 Cal.App.3d at p. 393 [noting that the danger of CSAAS testimony being used to draw predictive conclusions is present when the jury is *not* aware that this behavior "is also found in significant numbers of children who have not been molested"].) Dr. Rogers also never used the word "syndrome" in her testimony. (See *id.* at p. 392, fn. 8 [suggesting that use of the word "syndrome" "assumes the child is a 'legitimate victim' of sexual abuse" and is "neither relevant nor necessary" to rebut common misconceptions].) Nor did she otherwise state or imply that she was describing symptoms for diagnosing a victim of child sexual abuse. Nothing in her testimony suggested that her opinions could be used to profile E.A. as a victim of sexual abuse or determine that the charged abuse actually occurred.

More to the point, the trial court made clear to the jury that the evidence could *not* be used for such a purpose. Immediately following Dr. Rogers's testimony, the court told the jurors it was "not evidence that Mr. Gallardo committed any crimes charged in this case" and instructed them: "*Don't consider it as some kind of profiling evidence against him.*" (Italics added.) We cannot imagine a more direct admonition not to use the CSAAS testimony as profile evidence. Absent any contrary indication in the record, we must presume the jury followed this limiting instruction. (*People v. Waidla* (2000) 22 Cal.4th 690, 725.)

As part of the same admonition, the court also emphasized to the jury that Dr. Rogers was merely identifying "common misconceptions or myths" about how victims of child abuse behave. The court told the jury it could

consider this evidence in evaluating E.A.'s credibility but "not as direct evidence of Mr. Gallardo's guilt." In several different ways, therefore, the court's admonition immediately following Dr. Rogers's testimony informed the jury it could not use this evidence to conclude that Gallardo was guilty because E.A. fit the "profile" of a child abuse victim.

The first two sentences of CALCRIM No. 1193 as given to the jury at the end of trial further reinforced this point. They stated: "Testimony by Dr. Rogers is offered and may be considered by you *only* for the purpose of understanding and explaining the behavior of Jane Doe (E.A.) in this case and *not as proof that the molestation occurred as to Jane Doe* (*E.A.*) [¶] Dr. Rogers's testimony about the behavior of alleged victims of child molestation is *not evidence that the defendant committed any of the crimes charged against him*." (Italics added.) By telling the jury that Dr. Rogers's testimony could not be considered "as proof that the molestation occurred," the court once again precluded the jury from using it as profile evidence to prove that the molestations occurred. Moreover, the modified version of CALCRIM No. 1193 given by the court also eliminated the potentially misleading use of the word "syndrome" and the phrase "child sexual abuse accommodation syndrome."

The prosecutor also drove the point home in closing argument to the jury. The prosecutor did not mention or rely on the "consistent with" language of CALCRIM No. 1193 in his argument, nor did he suggest that Dr. Rogers's testimony could be used as evidence that E.A. fit the profile of a child abuse victim. On the contrary, the prosecutor argued that "every kid has different reactions." He also reminded the jury that Dr. Rogers had never met E.A. or read any of the reports in this case and was only providing information about "victims of child molestation *as a class*." (Italics added.)

14

The prosecutor emphasized: "She's not diagnosing anybody in this case or making an opinion on the case, that's your job." These remarks further underscored that Dr. Rogers was not profiling E.A. as a victim of child abuse or expressing an opinion as to the truth of the charges or Gallardo's guilt.

In sum, considering the totality of the record, including Dr. Rogers's testimony, the trial court's lengthy admonition immediately following her testimony, the prosecutor's closing argument, and the rest of CALCRIM No. 1193 as given to the jury, we conclude there is no reasonable possibility the jury was misled into believing it could use the CSAAS testimony as profile or diagnostic evidence to prove E.A. had in fact been molested. We therefore reject Gallardo's related argument that the jury instructions created an impermissible inference of guilt in violation of the Fourteenth Amendment. Accordingly, we conclude there was no instructional error, or alternatively, even assuming any error in the "consistent with" portion of the instruction, it would be harmless under either the *Watson* standard or the *Chapman* standard.

DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.

15