Filed 4/29/26  P. v. Hune CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MALCOLM JAMAR HUNE,<br><br>    Defendant and Appellant. | D084535<br><br><br>(Super. Ct. No. SCD302115) |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Collette C. Cavalier, Daniel J. Hilton, Steve Oetting and Tami Falkstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

Malcom Jamar Hune appeals the judgment sentencing him to prison for three years after a jury found him guilty of infliction of corporal injury on

his spouse. He complains misconduct by the prosecutor, evidentiary error, instructional error, and ineffective assistance of counsel deprived him of a fair trial and require reversal of the judgment. We disagree and affirm.

I.

BACKGROUND

A.    *Facts*

Hune married T.H. in 2014. He sometimes lived with her in an apartment she leased, and at other times he lived with his mother.

One evening while T.H. was showering in her apartment, Hune saw what he thought was a naked video of a man appear on her smart phone. When T.H. exited the shower, Hune asked her to unlock the phone, but she refused to do so because she did not want him to see what was on the phone.

Hune followed T.H. to the bedroom closet and blocked the doorway. T.H. struck Hune with "as much force as [she] could muster" to try to get him to move out of the way. A "tussle" ensued during which Hune slapped T.H., grabbed and bit her hand, and ripped off her right thumbnail, all to try to get her to unlock the phone. She fought back by "swinging, kicking," and "tr[ying] to gouge his eyes out."

Hune and T.H. moved to the living room where a surveillance monitor captured their interaction. Hune continued to demand that T.H. unlock her smart phone. He struck her, and she kicked him. T.H. ordered Hune to leave. He complied and took her phone, watch, and car keys with him.

A few hours later, T.H. went to an urgent care center where she was treated for a missing thumbnail, scratches on her torso, and a bruise on her cheek. Four days later, she called the police to document the incident, not to press charges.

2

B.    *Charges and Plea*

The People charged Hune with two counts of infliction of corporal injury on a spouse.  (Pen. Code, § 273.5, subd. (a); undesignated section references are to this code.)  Count 1 was based on the events in the bedroom closet during which Hune bit T.H.'s hand and ripped off her thumbnail.  Count 2 was based on the events in the living room during which he struck and bruised her face.  The People alleged Hune had a prior conviction that constituted a strike under the "Three Strikes" law.  (§§ 667, subds. (b)–(i), 1170.12.)  They alleged as an aggravating sentencing circumstance that he had served a prior prison term.  (Cal. Rules of Court, rule 4.421(b)(3).)  Hune pled not guilty and denied all allegations.

C.    *Motions in Limine*

The People moved in limine to admit T.H.'s preliminary hearing testimony on the ground T.H. had evaded multiple attempts at service of a subpoena to appear at trial and was thus unavailable to testify.  (Evid. Code, § 1291, subd. (a)(2).)  Hune opposed the motion on the grounds that the People had not been diligent in attempting to serve T.H. with the subpoena and his opportunity to cross-examine her at the preliminary hearing was inadequate.  As to the latter ground, Hune objected that after the preliminary hearing, the People changed their theory on count 2 from a slap to the face to a punch that injured T.H.'s left eye and produced a photograph of the eye that was not produced at the preliminary hearing.  The People replied that to prove count 2 they would rely on the scuffle in the living room that was captured by the surveillance camera and the bruising to T.H.'s face, and they agreed not to introduce the photograph at trial.  The trial court ruled the People exercised due diligence in trying to serve the subpoena on T.H. and Hune had an adequate opportunity at the preliminary hearing to cross-

examine her about her injuries and how they were inflicted, and granted the motion to admit her preliminary hearing testimony.

The People also moved in limine to designate Marisela Cooper, a police detective with experience investigating domestic violence cases, as an expert witness "to explain the concept of delayed reporting of domestic violence, domestic violence victims' reluctance to testify, and the cycle of violence." They argued Cooper could explain to the jury why domestic violence victims "often minimize, recant, or even refuse to testify," and her testimony would "aid the jury in evaluating [T.H.'s] credibility, which is the ultimate issue in this case." Hune asked the court to exclude Cooper's testimony on the grounds the People had not timely disclosed their intent to present expert testimony, the testimony would not be admissible and would invade the province of the jury to decide the facts and to assess witness credibility, and he would have cross-examined T.H. differently at the preliminary hearing and would have consulted an expert had he known the People were going to call one. The trial court stated T.H. was "making every effort to absent herself" and "the People should be able to ask someone who has expertise why would a victim refuse to come to court and testify." It ruled Cooper could testify about domestic violence victims' "[d]elayed reporting, minimizing, and failure to or not wanting to come to court or refusing to come to court."

D.  *Trial Evidence*

The People presented T.H.'s testimony from the preliminary hearing, which is summarized in part I.A., *ante*. They introduced the surveillance footage that captured the scuffle between Hune and T.H. in the living room of her apartment.

The People presented testimony from Jason Gould, the police officer who went to T.H.'s apartment and took a statement from her about the

4

incident. Gould estimated T.H. was about five feet, five inches tall and weighed about 140 pounds. He authenticated and described photographs of T.H.'s injuries, which were admitted in evidence. Gould said T.H. gave him a video of the tussle with Hune in the living room. He watched the video and estimated Hune was about six feet tall and weighed between 180 and 200 pounds.

The People called Cooper to testify about common behaviors of victims of domestic violence. Cooper said victims commonly delay reporting due to fear of additional violence, uncertainty they want to go to court, and pressure from family or friends, but the delay does not mean the violence did not happen. She said it was "fairly common" for victims to minimize the violence or to change their stories because the violence is "an everyday thing" for them, they forget details, or they want to protect the abuser. On cross-examination, Cooper agreed victims may exaggerate what occurred during the initial argument and leave out details of the force they used against the perpetrators.

Hune called no witnesses and presented no documentary evidence at trial.

E. *Jury Instruction Conference*

At the conference on jury instructions, the trial court noted Hune requested no instructions on self-defense or mutual combat even though T.H. had testified that "she was initially the aggressor" and "punched [Hune] really forcefully." When the court inquired whether Hune was requesting any self-defense or mutual combat instructions, counsel and Hune conferred, and counsel responded, "No, defense is not asking for any of those instructions." The court noted it was "arguable that there may not even be

5

substantial evidence of self-defense or mutual combat" and was "comfortable with the request not to give it."

The pattern instruction on intimate partner battering syndrome (CALCRIM No. 850[1]) was also discussed at the jury instructions conference. The prosecutor stated she was not requesting that instruction based on the limited scope of Cooper's testimony. The trial court agreed the testimony was limited and stated that giving the instruction "might confuse the jury." Hune's counsel stated: "I agree with the Court and prosecution. And if it was requested, I would have objected."

F. *Closing Arguments*

During closing arguments, the prosecutor argued that on count 1 there were two different injuries, the missing thumbnail and the bite marks, either one of which could constitute the "traumatic condition" required for a guilty verdict. (§ 273.5, subd. (d).) She told the jury: "And the law says while you all have to agree that he is guilty of Count 1 beyond a reasonable doubt, you do not need to all agree on which injury. So six of you can believe that he inflicted that m[i]ssing thumbnail. Six of you can agree that he is guilty of those bite marks on her hands. As long as all 12 of you agree that there is a physical injury, that satisfies Count 1."

After the prosecutor completed her argument and outside the presence of the jury, Hune's counsel told the trial court the prosecutor "incorrectly

---

[1] The instruction states that an expert's testimony about "a pattern of behavior that may be present in domestic abuse cases . . . is offered only to explain certain behavior of an alleged victim of domestic abuse" and "is not evidence that the defendant committed any of the crimes charged." (CALCRIM No. 850.) It also tells the jury: "You may consider this evidence only in deciding whether or not [the victim's] conduct was consistent with the conduct of someone who has been abused and in evaluating the believability of (his/her) testimony." (*Ibid.*)

articulated the unanimity instruction [by] telling the jury that if six of you think the nail is ripped off and six of you think that the bite is okay, that's enough. The prosecutor "agree[d she] incorrectly referred to the unanimity instruction." The court also agreed the prosecutor had misstated the law on unanimity and said that "to convict the defendant, [the jurors] all have to agree as to the specific conduct that they're convicting on the particular count." Hune's counsel did not request any corrective action by the court and said she would correct the prosecutor's error in her own closing argument.

During her argument, Hune's counsel said the prosecutor was "incorrect" about the unanimity requirement and referred the jury to the unanimity instruction (CALCRIM No. 3500).[2] She said the jury could not find Hune guilty "unless [the jurors] all agree beyond a reasonable doubt that the People have proved that he committed at least one act and [they] all agree on which act he committed." Hune's counsel continued: "So six for thumbnail, six for marking, that is not guilty. I just want to make sure that is clear."

In rebuttal, the prosecutor said: "Going back to Count 1, again, that's the thumbnail, the bite marks. You all have to agree on one. Six of you can agree that he pulled the thumbnail off, 12 of you can agree that there were those bite marks. He is guilty of Count 1. You just have to agree on one."

---

[2]  The trial court gave the following instruction on unanimity: "The defendant is charged with inflicting corporal injury on a spouse that resulted in a traumatic condition in Counts One and Two. The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless all of you agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed." (CALCRIM No. 3500.)

7

G.	*Verdicts and Sentence*

The jury found Hune guilty on both counts of infliction of corporal injury on a spouse.  He waived his right to a trial on the allegations concerning a prior conviction and service of a prior prison term and admitted them.  At the sentencing hearing, the trial court granted Hune's motion to dismiss the allegation concerning the prior strike conviction for purpose of sentencing under the Three Strikes law.  (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.)  The court sentenced Hune to prison for three years on each conviction and ordered the terms to run concurrently. (§§ 273.5, subd. (a), 669, subd. (a).)

## II.

## DISCUSSION

Hune raises several claims of error that he contends require reversal of the judgment.  We consider and reject each in turn below.

A.	*Prosecutorial Misconduct Regarding Juror Unanimity*

In his first claim of error, Hune accuses the prosecutor of misconduct for misstating the juror unanimity requirement during closing arguments when she argued that to find him guilty on count 1 the jurors did not have to agree unanimously on which specific injury (ripped-off thumbnail or bite marks) he inflicted on T.H. if they all agreed he inflicted one or the other.  Hune also accuses his trial counsel of ineffective assistance for failing to object to the misstatement or to request a curative instruction from the trial court.  He contends these errors deprived him of a fair trial and require reversal.  We are not persuaded.

"For a prosecutor to misstate the applicable law is misconduct."  (*People v. Gray* (2005) 37 Cal.4th 168, 217.)  Such misconduct requires reversal of a judgment if the misstatement made the trial fundamentally unfair or misled

8

the jury in a way that likely affected the outcome of the trial. (*People v. Choyce* (2025) 18 Cal.5th 86, 114–115; *People v. Shazier* (2014) 60 Cal.4th 109, 127.) Where, as here, "the alleged misconduct involves argument to the jury, 'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" (*People v. Perez* (2017) 18 Cal.App.5th 598, 623.) We do not presume the jury understood the remarks in the way most harmful to the defendant, and we consider them in the context of the whole argument and the jury instructions. (*People v. Bell* (2019) 7 Cal.5th 70, 111; *Shazier*, at p. 144.)

Hune contends the prosecutor committed misconduct by misstating the law that "[t]he jury must agree unanimously the defendant is guilty of a *specific* crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) He faults the prosecutor for telling the jurors in closing argument that they did not all have to agree on the same specific injury to find him guilty on count 1. But the prosecutor promptly admitted her error after Hune's counsel brought it to the trial court's attention during a conference outside the presence of the jury. And when closing arguments resumed, both Hune's counsel and the prosecutor told the jury it could not find Hune guilty on count 1 unless all jurors agreed he ripped off her thumbnail or all jurors agreed he bit her hand. Hune's counsel referred the jury to the unanimity instruction the court had already given (CALCRIM No. 3500), which Hune agrees was correct. The court had also instructed the jury that it must follow the court's instructions if it believed the attorney's comments conflicted with the instructions (CALCRIM No. 200). We presume the jury understood and followed the court's instructions. (*People v. Chhoun* (2021) 11 Cal.5th 1, 30; *People v. Pierce* (2025) 114 Cal.App.5th 508, 534.) The instructions together with the

9

closing argument of Hune's counsel and the prosecutor's rebuttal argument suffices to correct any error on the unanimity requirement the prosecutor made in the initial portion of her closing argument. We conclude Hune has not met his burden to " 'show that, "[i]n the context of the whole argument and the instructions" [citation], there was "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." ' " (*People v. Lamb* (2024) 16 Cal.5th 400, 436.)

B.    *Failure to Request Instructions on Self-defense*

Hune next complains his trial counsel was ineffective for not asking the trial court to instruct the jury on self-defense. He contends T.H.'s testimony she struck him with "as much force as she could muster" to try to get him to move out of the bedroom closet doorway and "tried to gouge his eyes out" constituted substantial evidence she was the aggressor and supported giving an instruction on self-defense. Hune argues that "any reasonable defense counsel would have at least requested the inclusion of these instructions so that any one of the potential jurors might have had reasonable doubt and failed to vote guilty," and trial counsel's failure to do so requires reversal. We disagree.

The burden to obtain reversal for ineffective assistance of counsel "is difficult to carry on direct appeal." (*People v. Lucas* (1995) 12 Cal.4th 415, 437.) When the defendant challenges a tactical decision by counsel, such as whether to request certain jury instructions (*People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 925), there is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1051 (*Nguyen*); *Lucas*, at p. 437.) The defendant may overcome that presumption on direct appeal only if (1) the record affirmatively shows counsel had no rational tactical purpose for the

10

challenged conduct, (2) counsel was asked for a reason and failed to provide one, or (3) there could be no satisfactory explanation. (*People v. Jasso* (2025) 17 Cal.5th 646, 676; *Nguyen*, at pp. 1051–1052.) None of those circumstances is present in this case.

During the conference on jury instructions, the trial court asked Hune's counsel whether she wanted the jury instructed on self-defense or mutual combat. Counsel briefly conferred with Hune and told the court the "defense [was] not asking for any of those instructions." The court did not ask Hune's counsel for an explanation, and she gave none. The record nevertheless suggests a tactical reason for not requesting instructions on self-defense. The evidence showed Hune initiated the conflict with T.H. by demanding access to her smart phone, was substantially larger than her, inflicted wounds on her that indicated he used more force than was necessary to defend himself, and left the apartment with her phone and other property. From that evidence, Hune's counsel reasonably could have concluded the jury was unlikely to find he had acted in self-defense and might look unfavorably on him if he claimed he had. (See *People v. Temple* (2025) 110 Cal.App.5th 1281, 1295 [self-defense is limited to use of force reasonably necessary to repel attack]; *People v. Eulian* (2016) 247 Cal.App.4th 1324, 1333 [right of self-defense is not available to one who provoked quarrel with intent to create occasion to use force].) Under those circumstances, counsel reasonably could have made the tactical decision not to request instructions on self-defense. (See *People v. Olivas* (2016) 248 Cal.App.4th 758, 772.) Because the record discloses nothing about counsel's reasons for not requesting self-defense instructions and Hune fails to show there could be no satisfactory reason for her not to have made such a request, his claim of ineffective assistance of

11

counsel fails. (*People v. Mickel* (2016) 2 Cal.5th 181, 200; *Nguyen, supra,* 61 Cal.4th at pp. 1051–1052.)

C.  *Admission of T.H.'s Preliminary Hearing Testimony*

Hune's third claim of error attacks the admission of T.H.'s preliminary hearing testimony at trial. He argues her prior testimony was inadmissible because it did not satisfy the cross-examination requirements of the Evidence Code and the federal Constitution. We reject the claim for the reasons discussed below.

The federal Constitution guarantees a defendant in a criminal case the right "to be confronted with the witnesses against him." (U.S. Const., 6th Amend.) That guarantee applies in state court proceedings through the 14th Amendment. (*Pointer v. Texas* (1965) 380 U.S. 400, 403.) "[T]here has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." (*Barber v. Page* (1968) 390 U.S. 719, 722.) When prior testimony is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." (*Crawford v. Washington* (2004) 541 U.S. 36, 68.)

"This traditional exception is codified in the California Evidence Code." (*People v. Herrera* (2010) 49 Cal.4th 613, 621.) The "former testimony" of a witness who is "unavailable" at a hearing is admissible if "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given *and had the right and opportunity to cross-examine the* [*witness*] *with an interest and motive similar to that which he has at the hearing.*" (Evid. Code, § 1291, subd. (a)(2), italics added.) When the statutory requirements are met, admission of prior testimony does not violate

the defendant's constitutional right of confrontation.  (*Herrera*, at p. 621.)  A trial court's decision to admit prior testimony under Evidence Code section 1292 is reviewed for abuse of discretion.  (*People v. Thomas* (2023) 14 Cal.5th 327, 375 (*Thomas*).)

Hune argues the legal requirements for admissibility of the preliminary hearing testimony of T.H. were not met.  He concedes she was unavailable at trial but contends he "did not have an opportunity to fully and fairly cross-examine [her] because of a change in trial tactics post-preliminary hearing, by the prosecution."  The changes of which he complains are the People's designation of Cooper "as an expert witness in the dynamics of domestic violence" and their reliance at trial on "a punch in the face with full-body lunging force" as the conduct underlying count 2 rather than the "slap on the cheek that cause[d] bruising" they relied on at the preliminary hearing.  Hune says that had he known of those changes before the preliminary hearing, he "would have had a much different cross-examination and a different motive."  We are not persuaded.

Hune's interest and motive in cross-examining T.H. at the preliminary hearing were similar enough to those at trial to permit the admission of her preliminary hearing testimony at trial.  In both proceedings, T.H.'s testimony about the violent interactions with Hune in the bedroom closet and in the living room "had the same tendency to establish [his] guilt.  [His] interest and motive in discrediting this testimony [were] identical at both proceedings." (*People v. Zapien* (1993) 4 Cal.4th 929, 975; see *Thomas, supra*, 14 Cal.5th at pp. 375–376 [defendant's interest and motive to discredit witness's testimony establishing guilt is " 'identical' " at preliminary hearing and trial].)  They did not become dissimilar "simply because events occurring after the [preliminary hearing] might have led counsel to alter the nature and scope of

13

cross-examination of [T.H.] in certain particulars." (*People v. Harris* (2005) 37 Cal.4th 310, 333.) The prosecutor's change from "slap" to "punch" as the word she used for the act by which Hune bruised T.H.'s face might have led Hune's counsel to adopt a similar change in terminology or to question T.H. more fully about the forcefulness of the act. The addition of Cooper as an expert witness on common behaviors of domestic violence victims might have caused Hune's counsel to interrogate T.H. more extensively on her motive to report the incident to police, why she delayed in doing so, why she did not want to press charges, and why she changed her story. But none of this "show[s] any new and significantly material line of cross-examination that was not at least touched upon [at the preliminary hearing]." (*Mancusi v. Stubbs* (1972) 408 U.S. 204, 215.) Our review of the transcript of Hune's counsel's cross-examination of T.H. at the preliminary hearing satisfies us that Hune "was given the opportunity for effective cross-examination." (*Zapien*, at p. 975.)[3] The trial court's decision to admit T.H.'s preliminary hearing testimony was not "so irrational or arbitrary that no reasonable person could agree with it" and therefore was not an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

---

[3]   That opportunity distinguishes this case from *People v. Brock* (1985) 38 Cal.3d 180, on which Hune relies. In *Brock*, a witness who had terminal illnesses and was on medications that may have altered her ability to recollect and to relate events testified at a preliminary hearing. (*Id.* at pp. 191–192, 194.) The witness's discomfort required a recess during and a shortening of cross-examination. (*Id.* at p. 196.) Under those circumstances, which bear no resemblance to those of this case, the witness's preliminary hearing testimony was inadmissible at trial because "the defendant was denied a meaningful opportunity for cross-examination." (*Id.* at p. 198.)

D.      *Late Designation of Expert Witness*

Hune's fourth claim of error is a challenge to the trial court's decision to allow Cooper to testify as an expert witness on common behaviors of victims of domestic violence.  He contends the court should have excluded that testimony because the People's late disclosure of their intent to call an expert witness deprived him of an opportunity to consult an expert who could have provided testimony contrary to Cooper's.  Hune also contends his trial counsel provided ineffective assistance by failing to seek remedies for the late designation besides exclusion of Cooper's testimony.  We reject these contentions.

A prosecutor must disclose to the defendant or his attorney at least 30 days before trial the names of all witnesses the prosecutor intends to call at trial.  (§§ 1054.1, subd. (a), 1054.7.)  "If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred."  (§ 1054.7.)  Failure to comply with a disclosure duty authorizes the trial court to order immediate disclosure, to institute contempt proceedings, to delay or to prohibit the testimony of a witness, to continue the matter, to advise the jury of any untimely disclosure, or to make any other lawful order to remedy the failure.  (§ 1054.5, subd. (b).)  We review for abuse of discretion a trial court's decision on whether or how to sanction a party for noncompliance with a disclosure duty.  (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 466; *People v. Ayala* (2000) 23 Cal.4th 225, 299.)

The People did not disclose to Hune their intention to call Cooper as an expert witness until the day set for trial.  The record suggests they did not do so earlier because they did not perceive a need for expert testimony until it

15

became clear T.H. would not testify at trial.  She evaded the People's repeated attempts to serve her with a trial subpoena, up to and including the day before they filed the in limine motion to designate Cooper as an expert witness.  Without the ability to question T.H. before the jury about her delay in reporting the domestic violence, her unwillingness to press charges, and the inconsistencies in her story, the People sought instead to question Cooper on those topics so that the jury would know such behaviors are not uncommon in domestic violence victims and could better assess T.H.'s credibility.  The record contains no indication the People's delay in designating Cooper as an expert witness "was 'willful and motivated by a desire to obtain a tactical advantage.' " (*People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1757.)  Rather, the delayed designation was a response to T.H.'s unforeseen unavailability, and the People made the designation "immediately" after the perceived need for it arose. (§ 1054.7.)  If Hune needed more time to prepare for trial, he could have asked the trial court for a continuance (§ 1054.5, subd. (b); *Gonzales*, at p. 1757), but he did not.  On this record, the court's decision to allow Cooper to testify as an expert witness despite the delayed designation was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at p. 377.)  The court did not abuse its discretion. (*Ibid.*)

We also reject Hune's related argument that trial counsel was ineffective for failing to request a sanction other than exclusion of Cooper's testimony.  Hune cites nothing in the record that suggests the trial court would have granted a request for an alternative sanction or that imposition of one would have led to a better trial outcome for him.  He cites a case that held the trial court should have given the jury an adverse inference instruction when the defendant was charged with resisting and battering a

police officer and citizen complaints against the officer for use of excessive force had been improperly destroyed. (*People v. Zamora* (1980) 28 Cal.3d 88, 93–94.) That case did not discuss ineffective assistance of counsel and has no obvious relevance to this one. Hune cites no other legal authority in support of his claim. We deem this claim of ineffective assistance of counsel "forfeited as unsupported by reasoned legal analysis and citation to authority." (*People v. Davis* (2022) 75 Cal.App.5th 694, 721.)

E.    *Failure to Instruct on Limited Use of Expert Testimony*

Hune's fifth claim of error concerns the failure to give the pattern instruction on the limited use the jury could make of Cooper's expert testimony about common behaviors of domestic violence victims (CALCRIM No. 850; see fn. 1, *ante*). First, Hune argues that without the instruction, the testimony was irrelevant and inadmissible and likely was used impermissibly by the jury to infer guilt. Second, he argues the trial court had a sua sponte to give the instruction. Third, he argues trial counsel was ineffective for failing to request the instruction or to object to the irrelevant testimony. None of those arguments is persuasive.

First, Cooper's testimony was relevant and admissible. Evidence of a witness's credibility is relevant and admissible. (Evid Code, §§ 210, 351.) Expert testimony about the "behavior of victims of domestic violence" is admissible in criminal cases if it is not offered to prove the defendant committed the acts underlying the criminal charges. (Evid. Code, § 1107, subd. (a).) To help the jury evaluate T.H.'s credibility, the People presented Cooper's testimony on why victims of domestic violence often delay reporting, give inconsistent reports, are reluctant to testify, and minimize the violence. Her testimony was relevant and admissible for that purpose. (*People v. Brown* (2004) 33 Cal.4th 892, 895–896 (*Brown*); *People v. Kovacich* (2011)

17

201 Cal.App.4th 863, 902 (*Kovacich*).) Cooper testified generically and briefly on the topics the People identified and said nothing about whether Hune had committed the violent acts T.H. reported or whether her behavior indicated he had. The prosecutor urged the jury to use Cooper's testimony on domestic violence victims' behaviors as a "light" or "lens" by which to consider the inconsistencies in T.H.'s testimony. The prosecutor never argued those behaviors were evidence that Hune committed the violent acts at issue in the case. We thus reject Hune's claim that "[i]t is highly probable that the jury here, without the required instruction, inferred guilt by the testimony of [Cooper]."

Second, the trial court had no sua sponte duty to instruct the jury with CALCRIM No. 850. When an expert witness testifies in a criminal case, the only required instruction is that prescribed by section 1127b.[4] The court gave the jury an instruction that complied with the statute (CALCRIM No. 332). When, as in this case, expert testimony is admissible for one purpose (to assess T.H.'s credibility) but not another (to prove Hune committed the charged acts), "the court *upon request* shall restrict the evidence to its proper scope and instruct the jury accordingly." (Evid. Code,

---

[4] "When, in any criminal trial or proceeding, the opinion of any expert witness is received in evidence, the court shall instruct the jury substantially as follows:

"Duly qualified experts may give their opinions on questions in controversy at a trial. To assist the jury in deciding such questions, the jury may consider the opinion with the reasons stated therefor, if any, by the expert who gives the opinion. The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion, if it shall be found by them to be unreasonable.

"No further instruction on the subject of opinion evidence need be given." (§ 1127b.)

§ 355, italics added.) To prevent improper use of evidence of common behaviors of domestic violence victims, our Supreme Court noted a "limiting instruction might also be appropriate *on request.*" (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1088, fn. 5., italics added.) "Absent a request, a trial court generally has no duty to instruct as to the limited purpose for which evidence has been admitted." (*People v. Cowan* (2010) 50 Cal.4th 401, 479.) Hune did not request CALCRIM No. 850. At the conference on jury instructions, his counsel agreed with the prosecutor and the court that the instruction should not be given, and had it been requested, his counsel "would have objected." On this record, the court had no duty to give the instruction.[5]

Third, Hune has not established ineffective assistance of trial counsel. Counsel did not perform deficiently by failing to object that Cooper's testimony about common behaviors of domestic violence victims was irrelevant. As we explained above, her testimony was relevant to the issue of T.H.'s credibility and was admissible on that issue. (Evid. Code, § 1107, subd. (a); *Brown, supra*, 33 Cal.4th at pp. 895–896; *Kovacich, supra*, 201 Cal.App.4th at p. 902.) Counsel was not ineffective for failing to assert a meritless objection. (*People v. Ochoa* (1998) 19 Cal.4th 353, 463; *People v. Page* (2025) 114 Cal.App.5th 1022, 1034 (*Page*).) Nor has Hune shown trial

---

[5] We decline Hune's invitation to follow *People v. Housley* (1992) 6 Cal.App.4th 947, 959, which imposed on trial courts a sua sponte duty to give a limiting instruction "in all cases in which an expert is called to testify regarding CSAAS [child sexual abuse accommodation syndrome]." *Housley* is inconsistent with the statutory and case law discussed in the text. And other courts, including this court, have held an instruction limiting the use of CSAAS evidence need be given only if requested. (See, e.g., *People v. Mateo* (2016) 243 Cal.App.4th 1063, 1074; *People v. Stark* (1989) 213 Cal.App.3d 107, 116.)

counsel was ineffective for failing to request CALCRIM No. 850. Counsel's statement at the jury instructions conference that she would have objected to giving the instruction had the People requested it strongly suggests she had a tactical reason for not wanting it. Because counsel did not disclose that reason and was not asked to do so, to prevail on his claim of ineffective assistance Hune must show "there could be no conceivable reason for [her] not to request [the] instruction." (*Nguyen, supra*, 61 Cal.4th at p. 1052.) Given the brevity and generality of Cooper's testimony, Hune's counsel reasonably could have concluded that giving CALCRIM No. 850 was unnecessary and might have the unwanted effect of directing the jury's attention to testimony that arguably bolstered T.H.'s credibility. Counsel's decision not to request a limiting instruction that might have focused the jury on evidence potentially harmful to her client was a reasonable tactical choice. (*People v. Maury* (2003) 30 Cal.4th 342, 394; *People v. Freeman* (1994) 8 Cal.4th 450, 405; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 934.) Hune has not shown counsel was ineffective for having made that choice.

F.    *Cumulative Error*

As his sixth and final claim of error, Hune argues that even if none of the prior asserted errors by itself requires reversal of the judgment, "the multiple errors combined to have a synergistic effect that deprived [him] of his right to a fair trial, to due process, and to present a defense." A series of trial errors that were individually harmless may require reversal if the combined effect of the errors deprived the defendant of a fair trial. (*People v. Capers* (2019) 7 Cal.5th 989, 1017; *Page, supra*, 114 Cal.App.5th at p. 1034.) Since we have rejected all of Hune's previous claims of error, there are no errors to aggregate, and his claim of cumulative error necessarily fails. (*Capers*, at p. 1017; *Page*, at pp. 1034–1035.)

## III.

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.